**GULF WANDES CORPC** Products Division, Ind behalf of all others si Plaintiffs,

v.

**GENERAL ELECTRIC** Defendan

Civ. A. No. 71-

United States Distr
E. D. Louisi
Feb. 11, 19

...ner, Jr., New Orleans,
...s.

...tmann, Michael R. Fon-
...igman, Walther, Witt-
...son, New Orleans, La.,

...istrict Judge:

...olves an alleged breach
...s and alleged violations
...laws, and purports to be
...lf of a class represented
... On two prior occasions
...t having before me any
...cts, made determinations
... class action issue on the
...aintiff's bare allegations.
...arties have now filed suf-
...information in the record
...nal determination of the
...ue.

...former independent dis-
...extolite", which is a deco-
...e manufactured by the de-
...led three complaints. Es-
... complaints have centered
...ions of (1) breached oral
... (2) price-discrimination
...Textolite by defendant be-
...ependent distributors and
...uipment manufacturers
...are allegedly the favored
...After the filing of the
...laint, defendant filed a
...ore Definite Statement on
...t plaintiff failed to allege
...s evidencing an antitrust
...is motion was granted.
... plaintiff filed a Supple-
...mended Complaint, and the
...onded with a Motion for
...he Pleadings with respect
... antitrust allegations. I
...motion after finding that
...ended and Supplemental
...ill failed to allege facts
...w that the alleged conduct

of defendant was calculated to harm the public interest; (2) the Amended and Supplemental Complaint failed to allege any anticompetitive effect of the alleged conduct of defendant which purportedly violated the Robinson-Patman Act; and (3) the Amended and Supplemental Complaint did not allege facts linking the alleged conduct of defendant to any harm suffered by plaintiff's customers, who purportedly competed with the original equipment manufacturers. However, plaintiff was granted leave to again amend its allegations, and a Second Amended Complaint was subsequently filed. While defendant has vigorously attacked the theoretical validity of the allegations of the Second Amended Complaint in memoranda submitted to the Court with respect to the class action issue, no formal motion to dismiss the Second Amended Complaint has been filed. Therefore, for purposes of determining the class action question, I have assumed that plaintiff's allegations make out an antitrust cause of action.

While these substantive clashes between the parties were being resolved, a dispute arose as to the propriety of this suit for class action treatment. Plaintiff filed a Motion to Allow Class Action prior to the judgment dismissing the antitrust allegations of the Supplemental and Amended Complaint. At that time, plaintiff had failed to describe the class adequately, and defendant suggested a number of grounds on which the allegations concerning the class were insufficient. My dismissal of the antitrust claims, however, came prior to a ruling on the class action issue. When plaintiff filed the Second Amended Complaint, the theoretical insufficiencies of plaintiff's class allegations were cured. Plaintiff alleged the following description of the class:

The class which plaintiff represents is composed of the present independent distributors of defendant's product Textolite, together with those distributors who have terminated their

distributorships or have been terminated by the defendant within the prescriptive period provided by the antitrust laws.

When the defendant did not attack the substantive sufficiency of the Second Amended Complaint, I made a tentative resolution of the class action issue. I found that the plaintiff's allegations were sufficient to allow the case to proceed as a class action at least until factual information was developed which would allow final resolution of the class action question. At that time, I had virtually no facts before me on which to base a final resolution of the two issues I deemed necessary for the maintenance of a class action in this case: (1) whether a class action "is superior to other available methods of the fair and efficient adjudication of the controversy," Fed.R.Civ.P. 23(b)(3), and (2) whether the anticompetitive effect of the alleged Robinson-Patman violation could be assumed to be the same in relevant markets nationwide. However, on the basis of my determination that this suit should tentatively proceed as a class action, I ordered the parties to prepare an initial draft of the Rule 23(c)(2) notice for my approval and dissemination to class members.

Subsequent to this ruling, defendant moved for reconsideration of my decision or for certification of the class action issue to the United States Court of Appeals for the Fifth Circuit pursuant to 28 U.S.C. § 1292(b). Defendant's motion for reconsideration requested in part that I resolve the factual issues left open by my earlier class action opinion before sending notice of the action to potential class members. While I rejected defendant's request for full reconsideration of the class action issue and determined that my earlier ruling was not so controversial as to justify certification of an interlocutory appeal, I agreed that a positive decision to go forward with the class action should be based on relevant specific factual information rather than the purely theoretical arguments then before the Court. Therefore, I ordered both parties to submit factual reports treating the propriety of maintaining this case as a class action.

The report of the defendant with respect to the class action question provides the Court with specific facts supporting defendant's position that a class action is not the best available method of adjudicating this controversy. For the first time in this case, the report describes in detail the pricing policies of the defendant with respect to sales of Textolite to independent distributors and OEM accounts. Rather than indicating that the price differential in these sales was uniform nationwide, defendant's report establishes that the price differential varied considerably in various markets. OEM prices were determined strictly on a "meet competition" basis in each relevant market and thus varied considerably. Distributor pricing, although partially controlled by a distributor price list, could be varied through the availability of "contract" pricing and "agency" pricing, which, in substance, lowered the effective price to the distributor where lower prices to the customer were necessary to meet competition. In the case of agency pricing, direct shipments were made to customers by the defendant and the distributor received a commission on each sale for providing certain services. Thus, the report indicates that any anticompetitive effect of the price differential could be assumed to vary from market to market nationwide, and this necessitates proof as to each relevant market if this case is to be maintained as a class action. In addition, the report reviewed facts indicating that plaintiff was an atypical, rather than typical, distributor: (1) plaintiff's total sales of Textolite were extremely low when compared with the total sales of most other distributors for the period plaintiff was in business; (2) plaintiff's market penetration in the New Orleans area was extremely low in

comparison to the market penetration of most other distributors; (3) plaintiff inherited many of its customers from a former distributor which was also defendant's only OEM account in the New Orleans area, indicating that these customers did not compete with the OEM; and (4) the Textolite products normally distributed by plaintiff were different from those normally ordered by the New Orleans OEM, raising proof problems as to the requisite competition between plaintiff's customers and the OEM. Defendant argues that these specific factors, along with so-called "deficiencies" and "inconsistencies" of plaintiff's Second Amended Complaint, make plaintiff a poor representative of the alleged class. The facts of defendant's report are supported by three detailed affidavits.

The report filed by plaintiff essentially attacks the factual positions of defendant without offering facts to controvert them. Plaintiff argues that defendant's factual positions are not sufficiently supported or are not consequential enough to cause dismissal of the class action. No affidavits were submitted in support of this report. On the basis of defendant's class action report and the failure of plaintiff to controvert the factual information contained in the report, I hold that the class action in this suit should be dismissed.

Since defendant's OEM prices were determined nationwide on a "meet competition" basis, these prices would vary significantly from place to place. In addition, the existence of "agency" and "contract" pricing assures that there was at least some variance in prices received by independent distributors. Necessarily, therefore, the price differential between OEMs and independent distributors must have differed in different relevant markets, raising different proof problems with respect to each market on the issue of the anticompetitive effect of the price differential. In addition, the facts presented by defendant concerning varying market penetration of distributors in relevant markets increase the probability that proof on this issue would be different for different markets. Furthermore, the facts indicating that plaintiff's customers did not compete with AMPCO raise the likelihood that, at least in some instances, OEMs and customers of independent distributors were not in competition. Therefore, it can be assumed that different proof problems would arise as to each relevant market nationwide on the issue of any anticompetitive effect of defendant's price differential, and this issue left open by my earlier opinion must be resolved against the continuance of the class action. Chicken Delight, Inc. v. Harris, 412 F.2d 830 (9th Cir. 1969); Bel Air Markets v. Foremost Dairies, Inc., 55 F.R.D. 538 (N.D.Cal. 1972).

On the basis of the facts presented by the defendant, I also hold that a class action is not superior to other available methods of adjudicating this controversy. If this case proceeded as a class action, this Court would be required to examine proof of competitive conditions in every major market in this country. It would be necessary to examine: the number of competitors in each market; the prices offered each customer of independent distributors and each OEM account in each locality in order to determine applicable differentials; whether OEM accounts and customers of independent distributors were in active competition; the adverse impact of each differential in each market; the extent of public injury in each locality; whether defendant's competitors offered alternative prices to distributors' customers in each area; and many other economic considerations. The facts on which such determinations should be based are not available in New Orleans and can most conveniently be collected in individual

market areas. Therefore, the class action should be dismissed. Fed.R.Civ.P. 23(b)(3); Chicken Delight, Inc. v. Harris, 412 F.2d 830 (9th Cir. 1969).