BORO HALL et al., Plaintiffs,

v.

METROPOLITAN TOBACCO CO, INC., Defendant.

No. 76 C 430.

United States District Court, E. D. New York.

March 30, 1977.

Laurence P. Shiff, New York City, for plaintiffs.

Mudge Rose, Guthrie & Alexander, New York City, for defendant.

## MEMORANDUM AND ORDER

PLATT, District Judge.

The plaintiffs in this action, Boro Hall—Oxford Tobacco Company ("Boro Hall") and Jamaica Tobacco & Sales Corp. ("Jamaica"), are suing the defendant, Metropolitan Tobacco Company ("Metropolitan"), for price discrimination in violation of the Robinson-Patman Act, 15 U.S.C. § 13.

The plaintiffs move pursuant to Rule 23 of the Federal Rules of Civil Procedure for a determination that the action may be maintained as a class action. The class is defined as cigar and tobacco wholesalers in New York, New Jersey, Connecticut and Massachusetts who purchased cigars from Metropolitan from March of 1972 to March of 1976.

In their complaint and motion papers the plaintiffs allege that the Metropolitan Tobacco Company is the largest distributor of cigars such as White Owl, Robert Burns, William Penn and others in the New York metropolitan area. The plaintiffs allege that from 1972 to 1976 Metropolitan sold cigars to at least four favored customers at prices from one to ten percent below the then prices charged to the class. These favored customers were Nassau County Tobacco of Farmingdale, New York, Queens Tobacco Company in Queens, Rubin Sundries Corporation in the Bronx and Boro Park Tobacco in Brooklyn.

Metropolitan, in its answer, raises the affirmative defense that any price differentiations were the result of good faith efforts to meet competition under 15 U.S.C. § 13(b).

In support of their motion the plaintiffs state that this class meets the requirements of Rule 23(a) in that (1) the class includes between 100 and 400 tobacco wholesalers and thus is so numerous that joinder of all members is impracticable; (2) there are common questions of law and fact as to the price discrimination and as to Metropolitan's defense; (3) the claims of the representative parties are typical of the claims of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Further, the plaintiffs contend that the class meets the additional requirements of Rule 23(b)(3) in that common questions of law or fact predominate over any questions affecting only individual members, and that a class action would be superior to other available methods for the fair and efficient adjudication of the controversy. The defendant challenges a number of these contentions.

First, the defendant argues that the class is not so numerous that joinder is impracticable. The plaintiffs have submitted lists of Metropolitan's customers, but there is a dispute as to how many of these customers would be included in the class. The defendants estimate from 56 to 90 would be in the class, while the plaintiffs estimate from 100 to 400 would be in the class. Further the defendants cite *Worthen Bank & Trust Co. v. National Bank Americard, Inc.*, 345 F.Supp. 1323, 1326–7 (E.D.Ark.1972), *rev'd on other grounds*, 485 F.2d 119 (8th Cir. 1973), *cert. denied*, 415 U.S. 918, 94 S.Ct. 1417, 39 L.Ed.2d 473 (1974), where 250 members were not found to be too numerous as to make joinder impracticable and *Minersville Coal Co. v. Anthracite Export Ass'n*, 335 F.Supp. 360 (M.D.Pa.1971), where a class action was denied with 330 members. Meanwhile the plaintiffs cite *Sunrise Toyota, Ltd. v. Toyota Motor Co.*, 55 F.R.D. 519 (S.D.N.Y.1972), where a class of 87 Toyota dealers was allowed and *Philadelphia Electric Co. v. Anaconda American Brass Co.*, 43 F.R.D. 452, 463 (E.D.Pa.1968), where a twenty-five member class was allowed. However, the Second Circuit in *DeMarco v. Edens*, 390 F.2d 836, 845 (2d Cir. 1968), stated that "courts should not be so rigid as to depend upon mere numbers as a guideline on the practicability of joinder; a determination of practicability should depend upon all the circumstances surrounding a case."

■ As the defendant concedes that there are between 56 and 90 members, and as the lists submitted by the plaintiff indicate that there are probably even more than that, the Court finds, based on all the circumstances surrounding the case, that joinder would be impracticable and so that requirement of Rule 23 is met.

Next the defendant challenges the plaintiffs' contention that they will fairly and adequately protect the interests of the class. In a case such as this where the class members are in competition among themselves, the courts have denied class action where the representative class member has interests potentially antagonistic to the class. *Plekowski v. Ralston Purina Co.*, 68 F.R.D. 443 (M.D.Ga.1975); *William Goldman Theatres, Inc. v. Paramount Film Distributing Corp.*, 49 F.R.D. 35 (E.D.Pa.1969); *Albertson's, Inc. v. Amalgamated Sugar Co.*, 503 F.2d 459 (10th Cir. 1974). As there are two plaintiffs in this action, each of their suitability to be class representatives will be discussed separately.

The defendant contends that there are a number of possible conflicts which render Jamaica Tobacco unsuitable to represent the class. First, Jamaica has brought another private antitrust action in the Southern District of New York against the General Tobacco Company and the defendant in this case, the Metropolitan Tobacco Company (*Jamaica Tobacco and Sales Corp. v. General Cigar Co., Inc. and Metropolitan Tobacco Co.*, S.D.N.Y. No. 76C 1482). At least one court has found this type of dual litigation a potential source of conflict between the class and its representative as the representative may press which ever litigation would most benefit him, *duPont v. Wyly*, 61 F.R.D. 615 (D.Del.1973). Secondly, Jamaica Tobacco wholesales throughout the entire metropolitan region and thus is in competition with all the mem-

bers of the class, unlike most of the wholesalers in the class who sell only in a few counties and not the entire region. Finally, Metropolitan in its answer has asserted counterclaims for treble damages under the antitrust laws for illegal pricing practices against Jamaica. Presumably, Metropolitan does not have these counterclaims against all the class members as it has not even counterclaimed against Boro-Hall, the other class representative. This counterclaim raises the possibility that Jamaica may wish to settle the case to avoid its own liability. For all these reasons it is questionable whether Jamaica would fairly and adequately protect the interests of the class.

The major flaw in Boro-Hall's representation of the class is that Boro-Hall concedes that it stopped purchasing cigars from Metropolitan on May 5, 1975, ten months before the end of the class period. The plaintiff states that Boro-Hall stopped buying from Metropolitan when it discovered the discriminatory pricing, but this does not eliminate the fact that Boro-Hall does not have a claim for a part of the class period. This raises serious questions as to Boro-Hall's suitability to represent the class. *J. W. T., Inc. v. Joseph E. Seagram & Sons, Inc.*, 63 F.R.D. 139 (N.D.Ill.1974); *Weinberger v. Retail Credit Co.*, 498 F.2d 552 (4th Cir. 1974); *DiCostanzo v. Hertz Corp.*, 63 F.R.D. 150 (D.Mass.1971).

Thus it is not clear that either Boro-Hall or Jamaica would adequately represent the interests of the class. However, the issue of class representation does not go to the heart of the class action question in that if the class is denied on this ground, a more representative class member might reopen the class question. Therefore we prefer to rest our decision of this motion on the requirements of Rule 23(b)(3) that common questions of law or fact predominate and that a class action is the superior method of handling this litigation.

As to that issue, the section of Clayton Act and its amendment, the Robinson-Patman Act, allowing private treble damage action states as follows (15 U.S.C. § 15):

"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . . ."

■ The courts have held that this provision requires that the plaintiff show competitive injury to his business in order to make out liability under the Act. *Al Barnett & Son, Inc. v. Outboard Marine Corp.*, 64 F.R.D. 43, 50 (D.Del.1974); *Haverhill Gazette Co. v. Union Leader Corp.*, 333 F.2d 798, 802 (1st Cir.), *cert. denied*, 379 U.S. 931, 85 S.Ct. 329, 13 L.Ed.2d 343 (1964); *Freedman v. Philadelphia Terminals Auction Co.*, 301 F.2d 830, 833 (3d Cir.), *cert. denied*, 371 U.S. 829, 83 S.Ct. 40, 9 L.Ed.2d 67 (1962); *Stearns v. Tinker & Rasor*, 252 F. 589 (9th Cir. 1957).

■ In a class action this means that each class member must prove that the defendant's discriminatory pricing injured him.

In our case this problem is exacerbated by the fact that there were at least four favored customers who sold in different but overlapping territories and who received different price advantages which varied over the course of the class period. Each class member's proof as to competitive injury and thus as to liability will be highly individualistic.

For this reason the courts have generally denied class action motions in Robinson-Patman Act cases. For example, in *Bel Air Markets v. Foremost Dairies, Inc.*, 55 F.R.D. 538, 541 (N.D.Cal.1972), a case very similar to this one, the Court stated as follows:

"The question whether a disfavored Foremost purchaser competed with a Lucky store will have to be individually proved since none of the disfavored customers can be assumed to have competed with a Lucky store. Some of the 2,000 grocery stores, included in the class, may have been in competition with one of Lucky's 140 stores.

\* \* \* \* \* \*

"So, the proof on this issue will differ for each disfavored customer depending on the type of store operated, the city in

which it is located, whether there were only Lucky stores in that city and, if so, the distance between it and the Lucky store, and other factors affecting competition. For each individual retail store, purchasing dairy products from Foremost, to prove that it competed with a favored Lucky store will take a substantial, if inestimable, amount of court time."

The difficulty in proving individual competitive injury is why the courts in Robinson-Patman Act cases have generally denied class action motions. *Chicken Delight, Inc., v. Harris*, 412 F.2d 830 (9th Cir. 1969); *Al Barnett & Sons, Inc. v. Outboard Marine Corp.*, 64 F.R.D. 43 (D.Del.1974); *Gulf Wandes Corp. v. General Electric Co.*, 62 F.R.D. 377 (E.D.La.1974); *Shaw v. Mobil Oil Corp.*, 60 F.R.D. 566 (D.N.H.1973).

In fact the only case that the plaintiffs cite where a class action was granted in a Robinson-Patman Act case is *Gold Strike Stamp Co. v. Christensen*, 436 F.2d 791 (10th Cir. 1970). In that case a trading stamp company in Utah was charging one price for its stamps to all the retail food stores in the state and a higher price to all the gas stations with the effect that Gold Strike Stamp created a monopoly in the trading stamp business. At this point it should be noted that the Robinson-Patman Act prohibits price discrimination "where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person . . . ." 15 U.S.C. § 13(a).

In our case the focus is an injury to competition as there is no allegation that Metropolitan is trying to create a monopoly in cigar wholesaling. This is what distinguishes our case and the other cases cited above from *Gold Strike Stamp* as the Court in that case stated as follows (436 F.2d at 795):

"By focusing on the creation of a monopoly in the trading stamp business, plaintiffs do away with the need to show effect upon competition between themselves and other buyers of Gold Strike Stamps, as normally required in price discrimination cases."

■ In this case there is no allegation of monopoly. The plaintiffs argue, however, that the favored customers, in effect, saturate the market and therefore competitive injury can be presumed as it was in *Gold Strike Stamp*.

However, in *Gold Strike Stamp* the favored customers were virtually every retail food store in Utah while here the plaintiff only alleges four favored customers. It is difficult to see how four favored customers can be presumed to be in competition with approximately one hundred class members.

The plaintiffs also argue that the cases cited above denying class actions are not relevant here because the Second Circuit's interpretation of the Robinson-Patman Act differs from the other Circuits. In *Samuel H. Moss, Inc. v. F. T. C.*, 148 F.2d 378, 379 (2d Cir.), cert. denied, 326 U.S. 734, 66 S.Ct. 44, 90 L.Ed. 438 (1945), that court did hold that once a plaintiff in a Robinson-Patman Act shows discriminatory pricing, the burden of proving the absence of anticompetitive effect shifts to the defendants. *Moss* has since been questioned and limited. *Kohner v. Wechler*, 477 F.2d 666, 671 (2d Cir. 1973) (Timbers, J., concurring); *Enterprise Industries, Inc. v. Texas Co.*, 240 F.2d 457, 460 (2d Cir.), cert. denied, 353 U.S. 965, 77 S.Ct. 1049, 1 L.Ed.2d 914 (1957); *Sano Petroleum Corp. v. American Oil Co.*, 187 F.Supp. 345 (E.D.N.Y.1960).

However, even assuming that *Moss* is still applicable, it would not change the analysis of the problems of a class action in this type of Robinson-Patman Act case. Regardless of whether the plaintiff must prove competitive injury or the defendant must prove lack thereof, it is clear that that proof will be largely individualistic as to each member of the class.

■ Therefore, we hold, as has every other case cited above except *Gold Strike Stamp*, that the common issues of law and fact do not predominate over the individual issues, and so this action does not meet the requirement of Rule 23(b)(3).

The plaintiffs' motion for a class action determination is, therefore, denied.

SO ORDERED.