Reinhold ZWICKER, d/b/a Zwicker Motor Company, on behalf of himself and all others similarly situated, Appellee,

v.

J. I. CASE COMPANY, Appellant.

No. 78–1599.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 11, 1979.

Decided April 4, 1979.

Maurice J. McSweeney, of Foley & Lardner, Milwaukee, for appellant; Robert L. Binder, Milwaukee, Wis., on briefs.

Jon R. Kerian, of Bosard, McCutcheon, Kerian, Schmidt, Holum & Rau, Minot, N. D., for appellee.

Before LAY, BRIGHT and STEPHENSON, Circuit Judges.

PER CURIAM.

In this action brought under the Robinson-Patman Act, 15 U.S.C. § 13 (1976), J. I. Case Company (Case) appeals from a judgment of the district court awarding treble damages of $20,325, plus attorneys' fees and costs, to Reinhold Zwicker, a Case tractor dealer in Turtle Lake, North Dakota. That judgment was based upon the district court's [1] findings, following a nonjury trial, that Case violated sections 2(a), (d), and (e) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13(a), (d), and (e) (the Act), by granting other Case dealers competing with Zwicker price discounts and promotional services not afforded Zwicker.

On appeal, Case contests the sufficiency of the evidence supporting (1) the district court's findings of violations of the Act, and (2) the amount of damages. For the reasons set forth below, we affirm in part and reverse in part.

---

1. The Honorable Bruce M. Van Sickle, United States District Judge for the District of North Dakota.

## I. *Factual Background.*

On December 1, 1970, Case, a major manufacturer of farm tractors, launched Operation Penetration, a nationwide marketing program designed to increase its share of the large-horsepower tractor market.[2] For purposes of the marketing program, Case identified the top 500 markets for large-horsepower tractors. For each such market, Case selected those dealers of Case products it considered best qualified to participate in the program. Case furnished each selected dealer with the names of the 200 largest farmers, including the forty-five best sales prospects as determined by Case, in that dealer's marketing region. The best sales prospects, called VIPs, became the targets of an intensive selling campaign by Case dealers. Dealers who sold tractors to VIPs received discounts ranging up to ten percent, and the dealers' salesmen received a fifty-dollar cash bonus for each sale to a VIP. To further assist the selected dealers in their selling efforts, Case sent specialized mailings to the VIPs, paid for promotional dinners for the VIPs, and allowed the dealers to loan tractors to the VIPs for a seven-day free demonstration period.

Reinhold Zwicker has operated a small Case dealership in Turtle Lake, North Dakota, since 1948. In addition to the dealership, in 1971 he was involved in various other businesses, including a Pontiac dealership, light excavation, farming, and apartment construction in Turtle Lake. As a whole, these businesses, all run out of Zwicker's Case dealership building, turned only a small profit. The trial court found that, at the time the Operation Penetration Program commenced, "Mr. Zwicker was running a marginal tractor sales operation, conserving an existing market, and generally winding down his business activity."

Case initially excluded Zwicker from Operation Penetration. When Zwicker accidentally learned about Operation Penetration in January 1971, he attempted to obtain an invitation into the program. After denying several requests by Zwicker for inclusion in the program, Case finally invited Zwicker to participate in August 1971. Zwicker had been advised by that time that his exclusion from the program might be the basis of a cause of action against Case for violation of the Robinson-Patman Act, and he delayed accepting the invitation until the spring of 1972. Thereafter, he participated in the program and received the same benefits provided the other selected dealers.

During the period of Zwicker's exclusion from Operation Penetration, two Case dealers within a thirty-mile radius of Turtle Lake received various benefits as a result of the program. In 1971, of thirty-three sales made by the Case dealer in McClusky, North Dakota, ten were accorded Operation Penetration discounts. Similarly, seven out of the sixteen sales made in 1971 by the Case dealer in Garrison, North Dakota, were Operation Penetration sales. Meanwhile, Zwicker's sales of large Case tractors dropped from eight in 1968–69, and ten in a fourteen-month period in 1969–70, to three sales during all of 1971.

Zwicker filed an action in federal district court in 1974 to recover damages for the losses allegedly sustained as a result of his initial exclusion from Operation Penetration. In his complaint Zwicker charged Case with violating sections 2(d), (e), and (f) of the Act by denying him the benefits of Operation Penetration while granting them to competing dealers.[3]

2. The first stage of the plan, Operation Penetration Program 100, ran from December 1, 1970 to November 30, 1971. Operation Penetration Program 200 ran from December 1, 1971 to November 30, 1972, and Operation Penetration Program 400 ran from December 15, 1972 to November 30, 1973.

3. 15 U.S.C. § 13(d), (e) and (f) read as follows:
   (d) It shall be unlawful for any person engaged in commerce to pay or contract for the payment of anything of value to or for the benefit of a customer of such person in the course of such commerce as compensation or in consideration for any services or facilities furnished by or through such customer in connection with the processing, handling, sale, or offering for sale of any products or commodities manufactured, sold, or offered for sale by such person, unless such payment or consideration is available on proportionally equal terms to all other customers compet-

After a bench trial in November 1977, the trial court held on January 24, 1978, that, during Operation Penetration Program 100, Case unlawfully discriminated in favor of Zwicker's competitors, i. e., the McClusky and Garrison dealers, by (1) paying part of their cost for specialized mailings and tractor demonstrations, in violation of section 2(d) of the Act, and (2) identifying potential customers for the selected dealers, granting the customers special price discounts, and furnishing fifty-dollar cash bonuses to the dealers' salesmen, in violation of section 2(e) of the Act.[4]

The court determined that Zwicker's exclusion from the program caused four separate losses: (1) $1,074.14 from one tractor sale lost to the McClusky dealer because the Operation Penetration discount allowed him to undersell Zwicker; (2) $1,500 resulting from Case's actions that, in effect, allotted Zwicker's area to the two dealers selected by Case; (3) $2,800 due to the specialized mailings, which led potential customers to Case's selected McClusky and Garrison dealers; and (4) $1,400 due to "injurious business gossip" arising from the specialized mailings. Zwicker's damages thus amounted to $6,774, which the court trebled pursuant to 15 U.S.C. § 15 (1976).

Thereafter, in response to a motion by Zwicker for additional findings, the district court ordered that the complaint be amended to conform to the evidence presented at trial of price discrimination in violation of section 2(a) of the Act.[5] The court held that the discounts given to Zwicker's competitors but denied to Zwicker during Program 100 constituted unlawful price discrimination under section 2(a) of the Act. However, the court found that the only damage caused by that price discrimination was the single tractor sale already found to have been lost to the McClusky dealer. As a result, the court awarded nominal damages of one dollar, trebled.

Zwicker's total damages, of $6,775 trebled, amounted to $20,325. In addition, the court awarded attorneys' fees in the amount of $12,671.20, plus costs. From the judgment awarding those sums to Zwicker, Case brings this timely appeal.

## II. *Discussion.*

### A. *The Section 2(a) Claim.*

▮ In the instant case, three elements must be proven to establish a violation of section 2(a) of the Act: (1) the seller (Case) charged two or more of its customers different prices for the same goods; (2) the favored customers were in competition with the disfavored ones; and (3) the price difference resulted in competitive injury on the customer level. 4 Von Kalinowski, *Antitrust Laws and Trade Regulations* § 30.-

---

ing in the distribution of such products or commodities.

(e) It shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers of a commodity bought for resale, with or without processing, by contracting to furnish or furnishing, or by contributing to the furnishing of, any services or facilities connected with the processing, handling, sale, or offering for sale of such commodity so purchased upon terms not accorded to all purchasers on proportionally equal terms.

(f) It shall be unlawful for any person engaged in commerce, in the course of such commerce, knowingly to induce or receive a discrimination in price which is prohibited by this section.

4. The court dismissed Zwicker's § 2(f) claim under the Act for lack of evidence that Case, the sole defendant, induced or received price discrimination benefits. That ruling is not before us on this appeal.

5. 15 U.S.C. § 13(a) reads in pertinent part:

(a) It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States * * *, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them * * *.

01[3], at 30–38 to 30–40 (1976). Case contests neither that it furnished discounts to the McClusky and Garrison dealers while denying them to Zwicker during Program 100, nor that those dealers were in direct competition with Zwicker. Rather, Case contends that Zwicker failed to prove competitive injury caused by that discriminatory treatment.

█ The trial court found that the sole injury resulting from the price discrimination was the single tractor sale Zwicker lost to the McClusky dealer. We need not decide whether that would satisfy the requirement of injury to competition, for our review of the record leads us to conclude that the court clearly erred in finding that Zwicker's lost tractor sale was the result of the price discrimination. The sale in question transpired in December 1972, well over a year after Case invited Zwicker into the Operation Penetration Program and eight months after Zwicker joined the program. The trial court recognized this gap in time but reasoned that Zwicker's failure to make the sale was nevertheless attributable to his exclusion from Program 100 because

> Mr. Zwicker did not have a chance to claim Mr. Westerlind [the buyer] as a VIP customer in 1971, and by the time the 1972 VIP lists were made up, Mr. Westerlind was lost to Mr. Zwicker as a VIP customer.

No evidence adduced at trial establishes that "by the time the 1972 VIP lists were made up, Mr. Westerlind was lost to Mr. Zwicker as a VIP customer." On the contrary, Donald Peterson, a Case district manager, testified that he told Zwicker in mid-1972 that it was "immaterial" whether his choices of VIPs were the same as those already made by another participating dealer. As it turned out, Zwicker's 1972 VIP list contained the names of at least four farmers previously chosen by the Garrison dealer as 1972 VIPs. Moreover, Zwicker testified that he thought the reason Westerlind was not on his 1972 VIP list was be-

cause Westerlind did not qualify for the list. In light of this evidence, and in the absence of any contradictory evidence, we conclude that Case's price discrimination against Zwicker in 1971 bore no relationship to Westerlind's purchase of a Case tractor from the McClusky dealer on the last day of 1972. Therefore, we reverse the judgment in favor of Zwicker on his section 2(a) claim.

### B. The Section 2(e) Claim.

The trial court found that Case had violated section 2(e) of the Act by identifying potential customers for those dealers chosen to participate in Operation Penetration and by allowing their salesmen fifty-dollar bonuses for sales to VIPs, while not providing such benefits to Zwicker.[6]

█ The McClusky and Garrison dealers testified that Case did not assist them in identifying potential customers, and the record establishes that their salesmen never received cash bonuses under Program 100. But even if Case provided some customer-identification assistance to Zwicker's two competitors, as it did to other dealers selected to participate in Program 100, the trial court made no specific finding of harm to Zwicker caused by the lack of such assistance to him. Therefore, we reverse the district court's judgment as to the section 2(e) claim.

### C. The Section 2(d) Claim.

The trial court held that Case's conduct in paying part of the cost of selected dealers' specialized mailings and tractor demonstrations violated section 2(d) of the Act. As with the cash bonuses, however, the availability of Case payments for the tractor demonstrations did not competitively harm Zwicker because his competitors, the McClusky and Garrison dealers, also did not receive such payments.

█ On the other hand, the evidence adduced at trial established that, during Pro-

---

**6.** The price discounts, originally found to be § 2(e) violations, were later considered, more appropriately, under § 2(a) of the Act.

gram 100, Case sent several mailings to farmers on the lists provided to the McClusky and Garrison dealers, whereas Zwicker was denied such advertising assistance. The first mailing, fully paid for by Case, included a twenty-page safety booklet, but did not contain the dealer's name. For the remaining two mailings, which contained small gifts, the dealers paid most of the cost and had their names and addresses imprinted on the gifts. The trial court found that Zwicker lost "business stature because J. I. Case Company put mailings into his primary trade area which led potential customers away from his business to other dealers." According due deference to the court's finding, we agree that the second and third mailings, which identified Zwicker's competitors, caused injury to Zwicker's business stature. Therefore, we affirm the trial court's holding that Case violated section 2(d) of the Act by paying part of the cost of specialized mailings on behalf of the McClusky and Garrison dealers.

D. *Damages.*

The trial court, faced with the difficult task of ascertaining the quantum of harm arising from the violations of the Act, awarded Zwicker the sums of $1,074.14, $1,500, $2,800, $1,400, and $1, totaling $6,775 in damages. We reject the $1,074.14 awarded because of the loss of the Westerlind sale and the nominal damage of one dollar incident thereto. In examining the record, it appears that the $1,500 award is duplicative of the awards for harm directly related to the mailings and injury to Zwicker's business reputation. We therefore reject the $1,500 award. As to the remaining awards totaling $4,200, we cannot say that such a sum is unreasonable.

■ Upon examining the record, we conclude that Case has demonstrated a proper basis for reduction of the total damage award to $4,200 ($2,800 due to mailings plus $1,400 injury to business reputation), which trebled, amounts to $12,600.

7. Although Case did not raise this as a separate issue on appeal, it did conclude its briefs with a request that the award of attorneys' fees be

Inasmuch as the damages must be reduced from $20,325 to $12,600, we think it appropriate to permit Case to argue before the trial court that the award of $12,671.20 in attorneys' fees also should be reduced.[7] We intend no expression of opinion on the attorneys' fees issue, for that determination initially rests within the discretion of the district court. Accordingly, we affirm in part, reverse in part and remand to the trial court for entry of an appropriate modified judgment consistent with this opinion.

stricken. Its notice of appeal is from the entire judgment, which included the award of attorneys' fees.