John O'CONNELL and John Governale, individually and on behalf of all others similarly situated, and Metropolitan Juice Distributors Association, Inc., Plaintiffs,

v.

CITRUS BOWL, INC., Beatrice Foods Co., Inc., Tropicana Products Sales, Inc., Tropicana Products, Inc. and "X" individuals and "Y" corporations, said names being fictitious, exact names as yet being unknown, Defendants.

No. 81 CV 4054 (ERN).

United States District Court, E.D. New York.

Sept. 9, 1983.

Coffey, McHale, McBride, Olsen & Shooltz by Craig R. Olsen, Melville, N.Y., for plaintiffs.

Holland & Knight by Robert W. Sheppy, Bradenton, Fla., Sturm & Perl by Jerome Y. Sturm, New York City, for defendants.

## MEMORANDUM OF DECISION AND ORDER

NEAHER, District Judge.

In this action under the Robinson-Patman Price Discrimination Act (the "Robinson-Patman Act"), 15 U.S.C. § 13 *et seq.*, plaintiffs challenge the legality of certain business practices utilized in marketing and distributing citrus fruit products sold under the generic name of "Tropicana Product Sales, Inc." ("Tropicana") in the New York-New Jersey-Connecticut metropolitan region. According to the complaint, plaintiffs John O'Connell and John Governale, as well as the membership of the plaintiff corporation, Metropolitan Juice Distributors Association, Inc. ("MJDA"), are independent distributors of Tropicana products who service small retail grocery stores along individual routes throughout the metropolitan region. They complain that the defendant-suppliers,[1] acting in concert or individually, have discriminated against them and all other independent Tropicana routemen in violation of the Robinson-Patman Act by: (1) precluding the independent distributors from utilizing distribution terminals availa-

ble to other favored customers; (2) requiring the independent distributors to pay certain operating costs not levied against these same favored customers; and (3) employing promotional, discount and rebate policies which favor customers other than the independent distributors. Plaintiffs seek treble damages under section 4 of the Clayton Act, and an order pursuant to section 16 of the Clayton Act, 15 U.S.C. § 26, enjoining the alleged discriminatory practices.

Following a year of extensive discovery, plaintiffs have now moved to certify a class of plaintiff-distributors pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. The class proposed by plaintiffs consists of all persons, corporations and other entities purchasing Tropicana products from the defendants for resale in the metropolitan region. According to plaintiffs, the number of putative class members is approximately 80, including both O'Connell and Governale as class representatives, the other 53 members of the MJDA, and an estimated 25 non-MJDA-affiliated Tropicana routemen. In response, defendants have raised numerous objections, the principal one being the difficulty of adjudicating Robinson-Patman Act claims on a class-wide basis. For the reasons set forth below, the Court agrees with this contention and accordingly plaintiffs' motion must be denied.

### Rule 23 Requirements

To maintain a class action, plaintiffs have the burden of proving that they meet all the elements of Rule 23(a) and the requirements of at least one of the subsections of Rule 23(b). *Free World Foreign Cars, Inc. v. Alfa Romeo,* 55 F.R.D. 26 (S.D. N.Y.1972); 3B Moore's Federal Practice ¶ 23.02, at p. 23–96 (2d ed. 1978). While defendants claim that plaintiffs have failed to establish compliance with the elements of Rule 23(a), for purposes of this motion, Rule 23(b) presents a more formidable and fun-

---

1. The defendants include Citrus Bowl, Inc., Beatrice Foods Co., Inc., Tropicana Products Sales, Inc., and Tropicana Products, Inc. Plaintiffs' complaint contains a variety of allegations concerning defendants' corporate affiliation and the nature of their business activities. Defendants have denied these allegations. Since they are not germane to the disposition of the present motion, they are not repeated here.

damental obstacle to certification of the proposed class. In the interests of efficiency and judicial economy, only the requirements of Rule 23(b)(3) will be discussed.

A class action may be maintained under Rule 23(b)(3) only if

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

F.R.Civ.P. 23(b)(3). In this instance defendants contend that if the proposed class is certified, individual rather than common issues will predominate with respect to both liability and damages. Consideration of that contention requires examination of the claims raised by plaintiffs' complaint in some detail. *Shaw v. Mobile Oil Corp.,* 60 F.R.D. 566, 568 (D.N.H.1973); *Abercrombie v. Lum's, Inc.,* 345 F.Supp. 387, 390 (S.D. Fla.1972).

### The Robinson-Patman Act

As noted above, the focus of plaintiffs' complaint concerns defendants' purported discrimination against the independent distributors. Unfortunately, neither the complaint nor plaintiffs' moving papers clearly set forth the statutory foundation for plaintiffs' claims or even the precise nature of their injuries. In paragraph 1 of the complaint, plaintiffs assert that defendants' business practices violate "section 2(e) of the Robinson-Patman Price Discrimination Act." In the same breath, however, plaintiffs also invoke all the other subsections of section 2 as well as the criminal proscriptions of section 3 of the Act. Adding to the confusion, plaintiffs then go on to assert in the three separate substantive counts of the complaint that defendants' business practices "result in price discrimination," an allegation actionable under section 2(a) of the Act.

Given the somewhat opaque language of the Robinson-Patman Act, plaintiffs' lack of precision in drafting their complaint is perhaps understandable. Nevertheless, since each portion of the Act is directed at distinct wrongs with different jurisdictional and evidentiary requirements, *see* Hansen, *Robinson-Patman Law: A Review and Analysis,* 51 Fordham L.Rev. 1113, 1124–25 (1983), our analysis requires a more precise definition of the allegations. In this respect, plaintiffs' citation to section 3 of the Act can be readily omitted. Courts have long held that the proscriptions of that section can only be enforced by the Attorney General and thus no private cause of action exists for its violation. *Safeway Stores, Inc. v. Vance,* 355 U.S. 389, 78 S.Ct. 358, 2 L.Ed.2d 350 (1958); *Steel Slides, Inc. v. Walter Kidde & Co.,* 321 F.Supp. 613 (S.D. N.Y.1970). Similarly, neither section 2(c), which pertains to "dummy-brokerage" cases, *FTC v. Henry Broch & Co.,* 363 U.S. 166, 168–69, 80 S.Ct. 1158, 1160–61, 4 L.Ed.2d 1124 (1960), nor section 2(f), which prohibits the knowing inducement or acceptance of price discrimination, 15 U.S.C. § 13(f), are germane to plaintiffs' allegations.

Sections 2(a), 2(d) and 2(e) reach related but distinct forms of business discrimination. Section 2(a) prohibits any form of price discrimination in the sale of commodities of like grade and quality when the effect may be to injure competition at either the seller or customer levels. 15 U.S.C. § 13(a). Sections 2(d) and 2(e), on the other hand, preclude more subtle forms of discriminatory favoritism. Section 2(d) prohibits a seller from paying its customer for "any *services or facilities* furnished by or through such customer in connection with the processing, handling, sale, or offering for sale of any products or commodities manufactured, sold, or offered for sale by [the seller]" unless such reimbursement is available to all competing customers on a proportionally equal basis. *Id.,* § 13(d) (emphasis supplied). Section 2(e) prohibits the same economic evil by precluding a seller from discriminatorily providing services or facilities in connection with the resale of the seller's product to only some of its customers.

Since section 2(a) by its very terms applies to both direct and indirect forms of

price discrimination, to the extent that the provision of or payment for services or facilities can be construed as indirect price discrimination, its proscription overlaps with those provided by sections 2(d) and 2(e). *See, e.g.,* 16 C.F.R. § 240.9, ex. 1, n. 2 (1982) ("Allowances that have little or no relationship to cost or approximate cost of the service provided by the [customer] may be considered to be in violation of section 2(d) or subject to the prohibitions of section 2(a) . . . ."). In an effort to delimit the scope of these sections, the Ninth Circuit has focused on the business function served by the discriminatory practice: "As a general rule, practices related to the resale of commodities are cognizable under section 2(e) [and section 2(d) ], while practices related to the original sale of commodities are cognizable under section 2(a). Thus, section 2(e) [and section 2(d) apply] 'only to services or facilities connected with the resale of the product by the purchaser.' " *Foremost Pro Color, Inc. v. Eastman Kodak Co.,* 703 F.2d 534, 546 (9th Cir.1983) (quoting *Purdy Mobile Homes, Inc. v. Champion Home Builders Co.,* 594 F.2d 1313, 1318 (9th Cir.1979)); *accord L & L Oil Co., Inc. v. Murphy Oil Corp.,* 674 F.2d 1113, 1119 (5th Cir.1982).

■ Applying this test to plaintiffs' complaint, it is apparent that their first and third causes of action seek to set forth section 2(a) violations, while the second cause of action presents a hybrid claim that implicates both section 2(d) and section 2(a). As noted above, the first and third claims are directed at the allegedly discriminatory services provided by defendants at the Tropicana distribution centers. The first count charges that defendants impose a fee on the independent distributors not charged to defendants' customers, thus purportedly increasing plaintiffs' cost of doing business. The third claim asserts that defendants exclude the independent distributors from certain apparently preferable distribution centers that are made available to other customers, once again causing an alleged in-

crease in plaintiffs' cost of doing business. While both causes of action involve the provision, or payment for, "services or facilities," neither allegedly discriminatory practice is related to plaintiffs' resale of Tropicana products. Rather, both practices relate to the terms of the original sale of Tropicana products to the independent distributors and their competitors. *See L & L Oil Co., Inc. v. Murphy Oil Corp., supra,* 674 F.2d at 1119 ("Problems associated with the delivery of a product directly concern only the original sale"). Accordingly, to the extent either claim states a valid cause of action, it is cognizable under section 2(a) as a form of indirect discrimination in the price of Tropicana products.[2] *See Kirby v. P.R. Mallory & Co., Inc.,* 489 F.2d 904, 909 (7th Cir.1973), *cert. denied,* 417 U.S. 911, 94 S.Ct. 2610, 41 L.Ed.2d 215 (1974); *Rickles, Inc. v. Frances Denny Corp.,* 508 F.Supp. 4, 6 (D.Mass.1980).

■ Plaintiffs' second cause of action challenging defendants' discount, promotional and rebate policies presents a somewhat more complicated characterization problem. Plaintiffs' first objection concerns the payment of promotional allowances by defendants to the retailers of Tropicana products who perform certain specified advertising activities. According to plaintiffs, defendants grant some of these retailers the privilege of obtaining the promotional allowance directly "off-invoice." Through this practice, defendants allegedly afford preferred retailers an immediate discount in price corresponding to the promotional allowance. Plaintiffs complain that their customers are never granted an off-invoice promotional allowance, but must first submit documentation reflecting the quantity of merchandise purchased and certification demonstrating compliance with the terms of the promotional scheme before they can obtain reimbursement for their advertising activities. This "bill-back" procedure, they claim, may take upwards of two months and places the distributors at a

---

**2.** For purposes of this motion, our inquiry is confined to whether the requirements of Rule 23 are met. *See Eisen v. Carlisle & Jacquelin,*

417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

competitive disadvantage since they are unable to afford their customers an immediate decrease in price and must require their customers to comply with a "difficult" verification procedure.

Without commenting on the merits of such a claim, it seems clear that it falls within the ambit of section 2(d), since in essence it concerns payment for services rendered "by or through the customer" in connection with the resale of the seller's product.

■ Plaintiffs' other items of concern are a 2% discount defendants afford to purchasers of certain frozen orange juice products who remit payment within ten days, and the amount of the damage rebate paid by defendants to their customers. Plaintiffs claim that they have never been offered the 2% discount, although they purchase some quantity of frozen orange juice from defendants. With respect to the rebate, they claim that some customers receive twelve cents per case of damaged goods, while private distributors obtain only eight cents per case. Obviously, neither of these practices constitutes the provision of, or payment for, a service or facility utilized by defendants' customers in connection with the resale of Tropicana products. Rather, both payments are directed at facilitating the original sale of defendants' products. Thus, to the extent they are actionable under the Robinson-Patman Act, both claims fall within section 2(a).

*Class Certification*

As the case law demonstrates, private antitrust actions under the Robinson-Patman Act are generally if not always manifestly "ill-suited to class action treatment."

*Kelly v. General Motors Corp.*, 425 F.Supp. 13, 20 n. 7 (E.D.Pa.1976); *see, e.g., Windham v. American Brands, Inc.*, 565 F.2d 59, 65–66 (4th Cir.1977), cert. denied, 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978); *Mekani v. Miller Brewing Co.*, 93 F.R.D. 506, 511 (E.D.Mich.1982); *Boro Hall v. Metropolitan Tobacco Co. Inc.*, 74 F.R.D. 142, 146 (E.D.N.Y.1977). The principal barrier to class certification is the highly individualized proof generally required to meet the requirements of section 2(a) of the Robinson-Patman Act and section 4 of the Clayton Act.

■ Under section 2(a), a plaintiff must establish that a defendant's discriminatory practices may either "injure, destroy, or prevent competition" between himself and a favored customer, or "substantially lessen competition" within the market in which the plaintiff competes.[3] Generally, to fulfill this requirement, "a plaintiff must demonstrate that the likely effect of the alleged price discrimination was to allow a favored competitor to draw significant sales or profits away from him, the disfavored competitor." *Chrysler Credit Corp. v. J. Truett Payne Co., Inc.*, 670 F.2d 575, 580 (5th Cir.1982); *see Enterprise Industries v. Texas Co.*, 240 F.2d 457, 458 (2d Cir.), cert. denied, 353 U.S. 965, 77 S.Ct. 1049, 1 L.Ed.2d 914 (1957). Obviously, in a class action, this issue raises numerous factual questions peculiar to each plaintiff which would preclude class certification, including proof of actual competition with a favored customer, *Gulf Wandes Corp. v. General Electric Company*, 62 F.R.D. 377, 380 (E.D.La.1974); *Shaw v. Mobil Oil Corp.*, 60 F.R.D. 566, 569 (D.N.H.1973); *Bel Air Markets v. Foremost Dairies, Inc.*, 55 F.R.D. 538, 540–41 (N.D.Cal.1972), as well as proof of the likelihood of harm to competition.

---

**3.** In discussing the merits of plaintiffs' Rule 23 motion, no opinion is expressed as to whether section 2(a) reaches discriminatory practices that merely threaten injury to an individual plaintiff but do not have the capacity to diminish competition in general. *Compare Foremost Dairies, Inc. v. FTC*, 348 F.2d 674, 678 (5th Cir.)

(holding that it does), cert. denied, 382 U.S. 959, 86 S.Ct. 435, 15 L.Ed.2d 362 (1965), *with Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 547–48 (9th Cir.1983) (holding that it does not). For purposes of this motion, the Court will assume that plaintiffs'

*Boro Hall v. Metropolitan Tobacco Co., Inc., supra,* 74 F.R.D. at 146.[4]

Further, even if an injury to competition can be shown on a class-wide basis, each plaintiff would then have to show that the discriminatory practice actually injured "*his* business or property" in order to establish liability for damages under section 4 of the Clayton Act. 15 U.S.C. § 15 (emphasis supplied); *J. Truett Payne Co. v. Chrysler Motors Corp.,* 451 U.S. 557, 562, 101 S.Ct. 1923, 1927, 68 L.Ed.2d 442 (1981). This would require *each* member of the class to demonstrate some loss or injury which it could attribute to defendants' allegedly discriminatory business practices. Thus, each class member's proof as to competitive injury and thus as to liability will [generally] be highly individualized. *Boro Hall v. Metropolitan Tobacco Co., Inc., supra,* 74 F.R.D. at 146; *accord Windham v. American Brands, Inc., supra,* 565 F.2d at 66.

Finally, once an injury in fact has been demonstrated each class member would be required to adduce proof of the quantum of damages on an individual basis. *J. Truett Payne Co. v. Chrysler Motors Corp., supra.* Plaintiffs cannot rely on a presumption that their injury is equivalent to the amount of price discrimination proven. *Id.* Rather, they must establish by "substantial relevant evidence" the extent of their loss. *Chrysler Credit Corp. v. J. Truett Payne Co., supra,* 670 F.2d at 582; *see, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 123–24, 89 S.Ct. 1562, 1576–77, 23 L.Ed.2d 129 (1969); *Bigelow v. RKO Radio Pictures, Inc.,* 327 U.S. 251, 264, 66 S.Ct. 574, 579, 90 L.Ed. 652 (1946). Obviously, this inquiry would necessitate separate hearings for each member of the class found to have been injured by defendants' conduct.

In an effort to circumvent the first of these formidable obstacles, plaintiffs contend that under Second Circuit precedent they need not show an injury to competition in order to make out a prima facie case of price discrimination. They point out that under the decision in *Samuel H. Moss, Inc. v. FTC,* 148 F.2d 378 (2d Cir.), *cert. denied,* 326 U.S. 734, 66 S.Ct. 44, 90 L.Ed. 438 (1945), a plaintiff need only show that a price difference exists in order to survive a motion for a directed verdict. While it is true that despite much criticism the *Moss* doctrine still retains vitality in this circuit, *e.g., John B. Hull, Inc. v. Waterbury Petroleum Products, Inc.,* 588 F.2d 24, 28 (2d Cir.1978), the rule itself does not remove the evidentiary difficulties raised by the injury-to-competition issue. The sole effect of the doctrine is to transfer "to the defendant the burden of proving that its acts did not substantially lessen competition." *Id.* The question of whether a form of price discrimination creates an injury to competition still remains a crucial part of every Robinson-Patman Act case. *Boro Hall v. Metropolitan Tobacco Co., Inc., supra,* 74 F.R.D. at 146. Consequently, for purposes of this motion the real issue is whether this question involves proof common to the class as a whole or rather would necessitate an inquiry into the competitive effects of defendants' conduct upon each individual plaintiff.

In answering that question, it is necessary to define the competitive injury asserted by the putative class, a task not facilitated by plaintiffs' complaint. A careful reading of the affidavits they submitted, however, reveals that for the most part plaintiffs do not claim to compete directly with

---

mere allegation of an injury to their competitive position is sufficient.

**4.** The Court notes that unlike section 2(a), plaintiffs' section 2(e) claim requires no showing of a competitive injury. *FTC v. Simplicity Pattern Co.,* 360 U.S. 55, 65, 79 S.Ct. 1005, 1011, 3 L.Ed.2d 1079 (1959); *see Alterman Foods v. FTC,* 497 U.S. 993, 1000 (5th Cir. 1974); *Tri-Valley Packing Association v. FTC,* 329 U.S. 694, 708 (9th Cir.1964). Although justifiably criticized, R. Posner, *The Robinson-*

*Patman Act: Federal Regulation of Price Differences* 48 (1976), no court to date has seen fit to challenge this interpretation of section 2(e). *But see Allen Pen Co. v. Springfield Photo Mount Co.,* 653 F.2d 17 (1st Cir.1981) (indicating that it might require such a showing in *future* cases). Since the adjudication of this motion does not require reaching the issue, *see infra,* the Court declines to address the question at this juncture.

**124**

the preferred customers for sales to the same retailers. Rather, plaintiffs appear to claim that they compete for the sale of Tropicana products from retailers in the New York-New Jersey-Connecticut metropolitan region to consumers within that geographic area. Apparently, they claim that the allegedly preferential treatment afforded certain of defendants' customers allows these purchasers to charge a lower wholesale price to their retail customers, with the result that these retailers can then charge a lower retail price to their consumers. Arguing that consumers naturally gravitate towards the lower-priced Tropicana products at these retail stores, plaintiffs apparently contend that defendants' business practices eventually affect the ability of the distributors to compete by decreasing their retail customers' demand for Tropicana products. *See Falls City Industries, Inc. v. Vanco Beverage, Inc.,* —— U.S. ——, 103 S.Ct. 1282, 1289, 75 L.Ed.2d 174 (1983) (finding similar tertiary-line competition cognizable under section 2(a)); *Blue Shield of Virginia v. McCready,* 457 U.S. 465, 102 S.Ct. 2540, 2547 n. 12, 73 L.Ed.2d 149 (1982) ("fourth level injury" cognizable).

Applying this analysis of plaintiffs' claimed injuries, some idea of the market allegedly affected by defendants' business practices can be stated. While plaintiffs' papers seek to define the relevant retail market as encompassing the entire New York-New Jersey-Connecticut metropolitan region, they have nonetheless conceded in deposition testimony that each member of the putative class faces different competitors on his particular local distribution route and consequently different competitive situations within the metropolitan area. Thus, plaintiffs seemingly agree with defendants that the metropolitan region does not constitute a separate and distinct geographic market for Tropicana products, but is instead made up of overlapping sub-mar-

kets at the retail level. This is, of course, understandable since the New York-New Jersey-Connecticut metropolitan region spans a broad area in which retailers of Tropicana products could not compete uniformly with one another for consumers of a product as fungible as citrus juices.

Given this definition of the relevant market, however, the Court cannot assume that defendants' business practices have a uniform competitive impact throughout each of these sub-markets or even that each member of the class actually competes with one of the alleged favored customers. *See, e.g., Bel Air Markets v. Foremost Dairies, Inc., supra,* 55 F.R.D. at 540. Thus, assuming that plaintiffs show defendants' conduct to result in a price differential, to survive a directed verdict under *Samuel H. Moss, Inc. v. FTC, supra,* defendants would be forced to introduce evidence negating its impact on competition in any of the sub-markets; or demonstrating that a particular member of the class does not compete with one of the favored customers; or showing that their business practices do not injure a particular class member's ability to compete. Plaintiffs would then be free to rebut any such inference with evidence and testimony of their own.

Since the proposed class consists of approximately 80 individuals competing in 80 different routes, it becomes apparent that resolution of the injury-to-competition issue could degenerate into a multitude of mini-trials.[5] The very scope of this inquiry alone precludes class certification. *Windham v. American Brands, Inc., supra,* 565 F.2d at 68; *Boro Hall v. Metropolitan Tobacco Co., Inc., supra,* 74 F.R.D. at 145.

Plaintiffs' attempt to circumvent the difficulties raised by their demand for treble damages is similarly without merit. Citing Rule 23(c)(4)(A), F.R.Civ.P., they contend

---

**5.** The Court notes that plaintiff O'Connell has claimed in his affidavit that he competes with certain of defendants' allegedly preferred customers for sales of frozen orange juice to some of the retail stores located on his distribution route. Plaintiff Governale, however, makes no similar allegation in his affidavits. This con-

flict in the asserted level of competition further supports the inference that the relevant market for Tropicana products is non-uniform and route specific, thus giving further support to the Court's conclusion that the injury-to-competition issue would require individualized rather than class-wide proof.

that the Court could preclude many of the individualized questions of proof by limiting class certification to a determination of liability alone, leaving the question of damages under section 4 of the Clayton Act to separate hearings in the event the defendants are found liable. This argument, however, confuses the distinction between the question of the *extent* of damages and the injury-in-fact requirement imposed by section 4. While these two issues are closely related in the sense that both involve an element of causation, they are nonetheless functionally different. *Smith v. Denny's Restaurants, Inc.*, 62 F.R.D. 459, 460 (N.D. Cal.1974); *Hansen, supra,* at 1142.

■ Unlike damages, the injury-in-fact requirement raises a question of standing and is a non-severable part of plaintiffs' case-in-chief under section 4 of the Clayton Act, *see J. Truett Payne Co. v. Chrysler Motors Corp., supra,* 451 U.S. at 562, 101 S.Ct. at 1927. In a class action, this means that each plaintiff as a part of his case-in-chief must show that he was in fact injured by conduct violative of the antitrust laws. *Id.* To do this, each plaintiff would have to demonstrate by a preponderance of the evidence that a favored customer actually used a price advantage competitively; the mere fact of a lower price would not be enough. *Chrysler Credit Corp. v. J. Truett Payne Co., Inc., supra,* 670 F.2d at 580–82; *Uniroyal, Inc. v. Jetco Auto Service, Inc.,* 461 F.Supp. 350, 358 (S.D.N.Y.1978); *Sano Petroleum Corp. v. American Oil Co.,* 187 F.Supp. 345, 353 (E.D.N.Y.1960). Because this generally means that some proof of lost sales must be shown to have resulted from the price differential, *see, e.g., Marty's Floor Coverings Co. v. GAF Corp.,* 604 F.2d 266, 270–71 (4th Cir.1979), *cert. denied,* 444 U.S. 1017, 100 S.Ct. 670, 62 L.Ed.2d 647 (1980); *Zwicker v. J.I. Case Co.,* 596 F.2d 305, 307–09 (8th Cir.1979) (*per curiam*); *Uniroyal, Inc. v. Jetco Auto Service, Inc., supra,* 461 F.Supp. at 359, class actions under section 4 of the Clayton Act premised upon violations of the Robinson-Patman Act generally present complicated, strictly individualized factual issues. *Windham v.*

*American Brands, Inc., supra,* 565 F.2d at 68 n. 20 (compiling cases).

In this case, plaintiffs have not informed the Court how they plan to prove that they have been injured by defendants' allegedly discriminatory behavior, nor have they given any indication how such a task could be accomplished on a class-wide basis. While "a district court should not decline to certify a class because it fears that insurmountable problems may later appear," *Windham v. American Brands, Inc., supra,* 565 F.2d at 70, given the diverse nature of the market allegedly harmed by defendants, it is logical to assume that the injury-in-fact requirement will pose individual rather than common questions of fact, requiring 80 different mini-hearings on this issue alone. Under these circumstances, the Court has no choice but to conclude that at least as to their claim for damages for violations of section 2(a), plaintiffs have not met their burden under Rule 23(b)(3), and class certification must be denied.

■ Plaintiffs' request for injunctive relief in connection with defendants' alleged violation of section 2(d), however, presents a somewhat different problem. Unlike plaintiffs' suit for damages, their demand for injunctive relief does not implicate the injury-in-fact requirement imposed by section 4 of the Clayton Act. *J. Truett Payne Co., Inc. v. Chrysler Motors Corp., supra,* 451 U.S. at 562, 101 S.Ct. at 1927. Rather, under section 16 of the Clayton Act, all they need show is a violation of the Robinson-Patman Act which threatens the class with future loss or damage, 15 U.S.C. § 26; *see Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 491, 97 S.Ct. 690, 698, 50 L.Ed.2d 701 (1977). Moreover, for purposes of their section 2(d) claim, the injury-to-competition requirement under section 2(a) is also removed. See note 3 *supra.* Without these obstacles, the question becomes one of whether plaintiffs' request for injunctive relief, along with their isolated assertion of a section 2(d) claim, changes the previous analysis of the class certification motion.

After reviewing the allegations of the complaint, it does not appear that the issues raised by plaintiffs' section 2(d) claim could efficiently be isolated from those raised by the other allegations in the complaint, or even effectively separated from the damage aspects of this claim. Not only would the section 2(d) issues have to be tried twice, once on the question of injunctive relief and a second time on the issue of damages, but each of the other claims raised by plaintiffs would require separate adjudication in any event. Thus, severing the section 2(d) issue from the other claims would add nothing to the prompt and efficient adjudication of this case. Since the purpose behind Rule 23 is to "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results," Advisory Committee's Note, 39 F.R.D. 69, 102–03, the Court sees no reason to create a class action solely for the purpose of adjudicating defendants' compliance with section 2(d).

In addition, even if the section 2(d) claim were severed for class treatment solely on the question of injunctive relief, it would not be "superior to other available methods for the fair and efficient adjudication of [this portion] of the controversy." F.R. Civ.P. 23(b)(3). Since any injunction which might issue after the adjudication of this case would benefit not only the named plaintiffs, but also all others similarly situated, certification of a class action solely for this claim would largely be a formality, at least for the plaintiffs. *See Galvan v. Levine,* 490 F.2d 1255, 1261 (2d Cir.1973) (citing cases), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974). This is particularly true in a case such as this where plaintiffs have admitted that they can and will assume the financial responsibility for continuing the case. *Windham v. American Brands, Inc., supra,* 565 F.2d at 69.

*Other Issues*

In resolving plaintiffs' class certification motion, the Court has become aware

that plaintiff MJDA has not alleged any specific injury to its corporate interests which would entitle it to assert the alleged antitrust violations. Neither has it requested any relief which could redound to its benefit as a corporation. Without such allegations, MJDA lacks standing under the antitrust laws and must be dismissed as a party to this suit. *See Associated General Contractors of California v. California State Council of Carpenters,* —— U.S. ——, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

Accordingly, plaintiffs' class certification motion is denied and plaintiff MJDA is dismissed as a party for lack of standing.

SO ORDERED.