**Debra OTT, Plaintiff-Appellant,**

v.

**SPEEDWRITING PUBLISHING COMPANY and I.T.T. Educational Services Inc., Defendants-Appellees.**

**No. 74-2002.**

United States Court of Appeals, Sixth Circuit.

July 14, 1975.

---

Archie R. Carpenter, Knoxville, Tenn., Oliver B. Dickins, Jr., Nashville, Tenn., for plaintiff-appellant.

Harold B. Stone, Stone & Bozeman, Knoxville, Tenn., Harvey M. Applebaum, Covington & Burling, Charles E. Lister, Washington, D. C., for defendants-appellees.

Before WEICK, LIVELY and ENGEL, Circuit Judges.

LIVELY, Circuit Judge.

The first question which must be decided in this case is whether the "death knell" doctrine as enunciated by the Court of Appeals for the Second Circuit in *Eisen v. Carlisle & Jacquelin,* 370 F.2d 119 (1966) (*Eisen I*), *cert. denied,* 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598 (1967), should be applied to permit the plaintiff Debra Ott to appeal from an order of the district court denying her request to prosecute this case as a class action under Rule 23, Fed.R.Civ.P.

Plaintiff, a former student at the Knoxville Business College, alleged in her complaint that Knoxville Business College and other institutions which teach the Speedwriting method of shorthand had entered into franchise contracts with the defendants under which each franchisee is obligated to sell one complete new set of the defendants' Speedwriting books to each student taking a shorthand course. It was further claimed that no student has been permitted to take such shorthand courses using secondhand books, and that through this device the defendants have suppressed and eliminated all competition from secondhand books and assured the sale of new books to each student at its franchisee business colleges. Jurisdiction was based on provisions of the Sherman and Clayton Acts, the declaratory judgment action and 28 U.S.C. § 1337. Claims were also made under the law of Tennessee, and plaintiff sought to have these adjudicated in the district court as pendent claims. The plaintiff's alleged injury resulted from the fact that her sister had previously taken a shorthand course at the Knoxville Business College and had made available to her all of the books required for the Speedwriting course. Nevertheless plaintiff charged that she was required to purchase new books at a cost of $30.00, and that in making this requirement Knoxville Business College was "acting in accordance with its contractual obligations to the defendants as a franchisee." Plaintiff also stated that she will be subjected to a further loss in that the continuing requirement that each new student purchase a set of books will make it impossible for her to sell her books when she has completed the course.

Although Debra Ott is the sole plaintiff, the complaint stated that the action was brought "on behalf of herself and others similarly situated for the defendants' deliberate suppression of the market for secondhand copies of books published by them." The complaint described the general class as consisting "of all persons injured by the defendants' practices of requiring all students taking shorthand to purchase new books from the defendants whether needed or not." It was stated that the number of such persons is unknown but that plaintiff "expects" it to be "in the hundreds" in Tennessee and "in the thousands" throughout the United States. The complaint alleged that the prerequisites to a class action set forth in Rule 23(a) have been met and certification of a class action was sought under 23(b)(1) or 23(b)(2), or in the alternative, under 23(b)(3).

The legal violation charged in the complaint is that contractual provisions imposed by the defendants upon their franchisees requiring students in the franchised business colleges to purchase new books demonstrate a combination or conspiracy in violation of Section 1 of the Sherman Act; constitute a monopoly or attempt at monopoly under Section 2 of the Act; and constitute an unwarranted interference with interstate commerce. Plaintiff further claimed to be entitled to an injunction under Section 12 of the Clayton Act and damages under Section 4 thereof. The prayer of the complaint,

in addition to requesting certification of the class action, sought a declaration of rights, temporary and permanent injunctions, damages, costs and reasonable attorneys fees and other relief necessary "to do justice."

In its answer ITT Educational Services, Inc. (ITTES) stated that its co-defendant Speedwriting Publishing Co., Inc. has been merged into ITTES and is no longer in existence. ITTES denied that Knoxville Business College is a franchisee, stating that it has been licensed by ITTES to teach the Speedwriting method of shorthand as part of its curriculum. The answer averred that ITTES has different licensing arrangements with various business colleges and denied that any licensee is obligated by any agreement with ITTES to sell Speedwriting books to any student or to require any student to purchase such books. It denied the suppression or elimination of competition for secondhand books or that Knoxville Business College is "under any contractual obligation to ITTES to require plaintiff to purchase any Speedwriting shorthand books."

ITTES made a motion to strike the class action allegations and filed affidavits in support thereof. The district court entered an order denying class action certification under Rule 23(c)(1) and filed a memorandum setting forth its reasons. The plaintiff did not seek a ruling from the District Judge that his order involves a controlling question of law under 28 U.S.C. § 1292(b) or request that judgment be entered pursuant to Rule 54(b). Furthermore, although the district court order denied a preliminary injunction as well as class action certification, the plaintiff did not seek to appeal under 28 U.S.C. § 1292(a). The notice of appeal states that it is "from the order of the Court overruling the plaintiff's Motion to certify the present suit as a class action . . .." Thus the plaintiff has proceeded under 28 U.S.C. § 1291 which provides that this court has jurisdiction of appeals from all "final decisions" of the district courts.

The defendant made a motion in this court to dismiss the appeal under Rule 8 of the Rules of the Sixth Circuit for lack of jurisdiction. This court ordered that the motion be passed for consideration by the panel to which the appeal was assigned. The parties have briefed and argued the questions raised by the motion to dismiss as well as the issue on appeal relating to the correctness of the action of the district court in denying class action certification.

## Appealability

As Mr. Justice Powell wrote for the Supreme Court in *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 170, 94 S.Ct. 2140, 2149, 40 L.Ed.2d 732 (1974) (*Eisen IV*), "While the application of § 1291 in most cases is plain enough, determining the finality of a particular judicial order may pose a close question. No verbal formula yet devised can explain prior finality decisions with unerring accuracy or provide an utterly reliable guide for the future." (footnote omitted). In *Cobbledick v. United States,* 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940), the Supreme Court traced the history of the finality requirement as a condition of review in the federal system and stated that it "has been departed from only when observance of it would practically defeat the right to any review at all." *Id.* at 324–25, 60 S.Ct. at 541. (footnote omitted). Exceptions to the finality requirement were spelled out more fully in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). In discussing interlocutory appeals the Court stated:

The effect of the statute is to disallow appeal for any decision which is tentative, informal or incomplete. Appeal gives the upper court a power of review, not one of intervention. So long as the matter remains open, unfinished or inconclusive, there may be no intrusion by appeal. But the District Court's action upon this application was concluded and closed and its decision final in that sense before the appeal was taken.

Nor does the statute permit appeals, even from fully consummated decisions, where they are but steps toward final judgment in which they will merge. The purpose is to combine in one review all stages of the proceeding that effectively may be reviewed and corrected if and when final judgment results. But this order of the District Court did not make any step toward final disposition of the merits of the case and will not be merged in final judgment. When that time comes, it will be too late effectively to review the present order, and the rights conferred by the statute, if it is applicable, will have been lost, probably irreparably. We conclude that the matters embraced in the decision appealed from are not of such an interlocutory nature as to affect, or to be affected by, decision of the merits of this case.

This decision appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated. The Court has long given this provision of the statute this practical rather than a technical construction. *Bank of Columbia v. Sweeny,* 1 Pet. 567, 569 [26 U.S. 567, 7 L.Ed. 265]; *United States v. River Rouge Co.,* 269 U.S. 411, 414 [46 S.Ct. 144, 70 L.Ed. 339]; *Cobbledick v. United States,* 309 U.S. 323, 328 [60 S.Ct. 540, 84 L.Ed. 783].

337 U.S. at 546, 69 S.Ct. at 1225.

Noting that the order before it would not be appealable "if Congress has allowed appeals only from those final judgments which terminate an action," *id.* at 545, 69 S.Ct. at 1225, the Court permitted an appeal because the order constituted "a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it." *Id.* at 546–47, 69 S.Ct. at 1226. The next year the Supreme Court held in *Dickinson v. Petroleum Conversion Corp.,* 338 U.S. 507, 514, 70 S.Ct. 322, 325, 94 L.Ed. 299 (1950), that a party must appeal from an order disposing of all of the issues in the case in which it is directly involved where the decree is not "tentative, informal nor incomplete as to it . . .," or lose its right of appeal. Thus a party acts at its peril in assuming that every order preceding a "final judgment" is not appealable.

Since Rule 23 was amended in 1966 many courts have been faced with the necessity of determining the appealability of class action orders entered under Rule 23(c)(1). In *Eisen I, supra,* the court held that an order denying a plaintiff the right to prosecute his case as a class action was appealable because the amount involved was so small that the court could "safely assume that no lawyer of competence is going to undertake this complex and costly case to recover $70 for Mr. Eisen." *Id.* at 120. The court concluded that the case fell within that "small class" described in *Cohen v. Beneficial Industrial Loan Corp., supra,* and stated the requirement for appealability of this type order as follows:

> Where the effect of a district court's order, if not reviewed, is the death knell of the action, review should be allowed.

370 F.2d at 121.

The Second Circuit has further refined the death knell doctrine in subsequent cases in which the named plaintiff had a more substantial financial stake in the outcome than that of Mr. Eisen. *See e. g., Shayne v. Madison Square Garden Corp.,* 491 F.2d 397 (2d Cir. 1974); *Korn v. Franchard Corp.,* 443 F.2d 1301 (2d Cir. 1971); *Caceres v. International Air Transport Association,* 422 F.2d 141 (2d Cir. 1970); *City of New York v. International Pipe and Ceramics Corp.,* 410 F.2d 295 (2d Cir. 1969); *Green v. Wolf Corp.,* 406 F.2d 291 (2d Cir. 1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

The Supreme Court recognized the rationale of the death knell theory in *Eisen*

*IV,* but did not specifically approve it. That case concerned appealability of an order relating to notice costs, and was decided on the basis of *Cohen v. Beneficial Industrial Loan Corp., supra.* While other courts of appeals have considered the death knell rule and some have applied it, only one, the Seventh, has rejected it outright. *See King v. Kansas City Southern Industries, Inc.,* 479 F.2d 1259 (7th Cir. 1973). The Court of Appeals for the Third Circuit noted the narrowness of the death knell rule and refused to apply it in *Hackett v. General Host Corp.,* 455 F.2d 618, *cert. denied,* 407 U.S. 925, 92 S.Ct. 2460, 32 L.Ed.2d 812 (1972). In a carefully written dissent, Judge Rosenn expressed the view that the rule should be given a more liberal application and, specifically that the court should have held the order denying class action certification in the *Hackett* case to be appealable. In *Weingartner v. Union Oil Co.,* 431 F.2d 26 (9th Cir. 1970), *cert. denied,* 400 U.S. 1000, 91 S.Ct. 459, 27 L.Ed.2d 451 (1971), the court held that an order denying class action certification was not appealable under Section 1291 because it did not fit the reasoning of the Supreme Court in the *Cohen* case. The court recognized the death knell doctrine, but held that this case more nearly resembled those decided by the Second Circuit after *Eisen I* where the plaintiffs had a sufficient financial stake to guarantee their individual continuation of an action. The court stated the rule to be that "an order dismissing a class action is appealable only when the dismissal for all practical purposes spells the end of the litigation." *Id.* at 29.

In *Williams v. Mumford,* 511 F.2d 363 (D.C.Cir. 1975), the court recognized the *Eisen I* death knell doctrine as an exception to the general rule that an order refusing to certify a class action is not a final decision under 28 U.S.C. § 1291, but found that both of the plaintiffs in that case had sufficient incentive to continue to press their claims apart from any right to proceed as a class action. The Court of Appeals for the Fifth Circuit has recognized death knell, but has held that when a plaintiff seeks to appeal an order denying class action certification he has the burden of developing facts before the trial court upon which findings of fact and conclusions of law may be rendered on the critical issue of whether such an order will actually extinguish the right to litigate. *Graci v. United States,* 472 F.2d 124 (5th Cir.), *cert. denied,* 412 U.S. 928, 93 S.Ct. 2752, 37 L.Ed.2d 155 (1973); *Gosa v. Securities Investment Co.,* 449 F.2d 1330 (5th Cir. 1971). While placing on the parties seeking to appeal the burden of developing a record, the court in *Graci, supra* at 126, stated that "An individual claim may be so small that the unfeasibility of litigation by the individual plaintiff is clear without any further showing," citing *Eisen I.*

In *Walsh v. City of Detroit,* 412 F.2d 226 (6th Cir. 1969), we held that an order permitting a case to proceed as a class action is not a final order appealable under § 1291 since it can be reviewed along with the final judgment. This court also considered the appealability of orders dealing with collateral issues as defined in *Cohen v. Beneficial Industrial Loan Corp., supra,* and other Supreme Court cases in *Kowalski v. Holden,* 276 F.2d 359 (1960), and stated:

> It would appear from these cases that appeals on collateral issues will lie, when substantial rights would be lost, if the appeal were delayed until the main stream of the litigation is terminated. *Id.* at 360.

 ITTES urges that even if this court should decide to follow the death knell doctrine, it should not be applied in an antitrust case such as the present one since the controlling statute provides that a person who establishes violation of the antitrust laws in a private action may recover "the cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 15. It is contended that the main argument of *Eisen I,* that a competent attorney would not undertake costly and complex litigation with an extremely

small amount involved, does not apply to those classes of cases where attorneys fees are allowed. Of course, antitrust actions are complex and ordinarily involve expenses beyond normal court costs and attorneys fees. It is settled that the words "cost of suit" in the statute quoted above do not mean "expenses of suit." *Straus v. Victor Talking Machine Co.,* 297 F. 791 (2d Cir. 1924); 6 J. Moore, Federal Practice ¶ 54.71[3], at 1385 (2d ed. 1974). Further, the fees of expert witnesses are not included in the recoverable costs in an antitrust action. *Trans World Airlines, Inc. v. Hughes,* 449 F.2d 51 (2d Cir. 1971), *rev'd on other grounds,* 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973). It has been held that "the only costs recoverable by a successful plaintiff in a private antitrust suit are those which are normally allowable under 28 U.S.C. § 1920 and Rule 54(d) . . . .." *Twentieth Century Fox Film Corp. v. Goldwyn,* 328 F.2d 190, 224 (9th Cir.), *cert. denied,* 379 U.S. 880, 85 S.Ct. 143, 13 L.Ed.2d 87 (1964). We do not believe that recovery of the costs allowable under 28 U.S.C. § 1920 and Rule 54(d) (*see* 6 J. Moore, *op. cit.,* ¶ 54.77) would be sufficient incentive for a plaintiff with a very small claim to pursue an antitrust action after denial of class action status.

▇▇ We conclude that although the reference to death knell originated in *Eisen I,* it is but one concrete application of an exception to the rule of finality which has been recognized by the Supreme Court at least since its decision in *Cobbledick v. United States, supra.* In *Gillespie v. United States Steel Corp.,* 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964), the Supreme Court approved the action of this court in deciding a case on appeal from an order striking portions of a complaint. It noted that previous departures from the requirement of finality had been approved in cases where a ruling was "fundamental to the further conduct of the case." *Id.* at 153, 85 S.Ct. at 311. The Court referred to the necessity recognized in *Dickinson v. Petroleum Conversion Corp., supra,* to balance the competing considerations of "the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other." 338 U.S. at 511, 70 S.Ct. at 324 (footnote omitted). We hold that the death knell doctrine is a legitimate expression of a well supported exception to the requirement of finality. Its application must depend, however, upon a balancing of the competing considerations described by the Supreme Court. Such a balancing can only be based on the record before the appellate court. Thus, we adopt the rule of the Fifth Circuit that no order denying class action certification may be appealed to this court unless the appealing party develops a factual record in the district court from which the District Judge may make findings on the issue of whether, for all practical purposes, the order from which the appeal is sought actually extinguishes the litigation. *Gosa v. Securities Investment Co., supra.* The district court may dispense with this requirement in cases where it takes judicial notice that the amount involved is so small that it is obviously unfeasible for an individual plaintiff to continue the litigation without class action status. *Cf. Graci v. United States, supra.* In proper cases, a party seeking to appeal from a class action determination should seek a certification under 28 U.S.C. § 1292(b) or entry of a partial judgment under Rule 54(b), Fed.R.Civ.P. In the interest of judicial economy, however, and noting that the plaintiff's total damages of $30 make this a case where further individual litigation may be presumed to be impracticable, we will proceed to decide the appeal which has been briefed and argued before us rather than remanding for findings by the district court. *Gillespie v. United States Steel Corp., supra.* The motion to dismiss this appeal for lack of jurisdiction is denied.

### Class Action Ruling

In a comprehensive memorandum opinion, District Judge Robert L. Taylor set forth his reasons for denying class

action certification. He found that the plaintiff had not proven that she met the requirements of Rule 23 for proceeding as a class action and noted that the Supreme Court in *Eisen IV* stated that these requirements are independent of any finding related to the plaintiff's likelihood of success on the merits. Judge Taylor held that Debra Ott failed to satisfy two of the primary prerequisites of a class action: that her claim is not typical of the class she seeks to represent, 23(a)(3); and that because of the difference between her situation and that of other students affected by the contract of which she complains she could not properly represent the class, 23(a)(4). These findings that the prerequisites of Rule 23(a) had not been met would be sufficient to justify denying class action certification. However, the court also determined that this case should not be maintained as a class action because it failed to satisfy the additional alternative requirements set forth in Rule 23(b). Specifically, the court found that the case would not be manageable as a class action (23(b)(3)(D)) because of the difficult nature of antitrust actions generally, the fact shown by the affidavits of the defendants that practices with respect to distribution of Speedwriting books vary greatly among the different licensees, and that a market share analysis would be required of approximately 200 metropolitan areas where licensees of the Speedwriting method operate. The court determined specifically that the requirement of Rule 23(b)(3) "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy" had not been met. In fact the court found that there were issues that would necessarily need to be separately resolved with respect to each class member. The court observed that the cost of the notices required under 23(b)(3) as interpreted by the Supreme Court in *Eisen IV* would be prohibitive to this plaintiff. Finally the district court made a finding that a class action in this case is not superior to other available methods of adjudication "in terms of efficiency."

In making these determinations the District Judge had before him uncontroverted affidavits that there is no uniformity in the manner in which licensees of ITTES charge students who use the Speedwriting textbooks and that ITTES has no control over the operations of its licensees except to require that each student be furnished a set of books. The affidavits disclosed that there are five Speedwriting books which each student receives, either for a separate fee or as part of an overall fee for a course at one of the licensees of ITTES. Two of these books are permanent texts and three are workbooks which are designed so that the student may enter his work and answers on a portion of the perforated pages, and detach this portion for submission to the instructor. Thus these three books are designed in such a way that they would rarely be useable by a second owner. Affidavits from the managers of several schools licensed to teach Speedwriting disclosed that students in those particular schools were free to use secondhand books in acceptable condition. The statements in the affidavits were consistent with ITTES' answers to interrogatories propounded earlier by the plaintiff.

▮ Though the hearing on the motion to strike class action allegations was not a trial within the meaning of Rule 52(a), requiring the court to "find the facts specially and state separately its conclusions of law thereon," the court's memorandum clearly indicates the factual bases underlying its holding. We find no error in the court's conclusion that the plaintiff failed to demonstrate that she could meet the requirements of Rule 23 in this case. The language of Rule 23, and particularly 23(b), appears clearly to be addressed to the discretion of the trial court. *See* 3B J. Moore, *op. cit.,* ¶ 23.97, at 23–1951; *Herbst v. International Telephone and Telegraph Corp.,* 495 F.2d 1308, 1316 (2d Cir. 1974); *Korn*

*v. Franchard Corp.,* 456 F.2d 1206, 1208 (2d Cir. 1972; *City of New York v. International Pipe and Ceramics Corp.,* 410 F.2d 295, 300 (2d Cir. 1969).

We find no abuse of discretion in the denial of a class action certification to Debra Ott in this case. The judgment of the district court is affirmed, and the cause is remanded for further proceedings.