**AMERICAN CUSTOM HOMES, INC., Saul Waldeman, d/b/a Waldeman Construction, and Waldeman Construction Company, Plaintiffs,**

**v.**

**DETROIT LUMBERMAN'S ASSOCIATION, Erb Lumber Company, C. F. Gibbs Lumber Company, Groesbeck Lumber Company, Haggerty Lumber & Supply Company, National Lumber Company, and Wallich Lumber Company, Defendants.**

Civ. A. No. 78–72621.

United States District Court, E. D. Michigan, S. D.

Sept. 24, 1981.

Hyman, Gurwin, Nachman, Friedman & Winkelman by Irwin M. Alterman, Southfield, Mich., for plaintiffs.

Dykema, Gossett, Spencer, Goodnow & Trigg by Robert G. Cutler, Detroit, Mich., for defendant Erb Lumber Co.

Hertzberg, Jacob & Weingarten, P. C. by Herbert N. Weingarten, Detroit, Mich., for defendant National Lumber Co.

Philip H. Dawson, St. Clair Shores, Mich., for defendant Detroit Lumberman's Association.

Bujold & Bailey by George B. Bailey, Jr., Troy, Mich., for defendant Groesbeck Lumber Co.

Miller, Canfield, Paddock & Stone by Gregory L. Curtner, Detroit, Mich., for defendant Wallich Lumber Co.

Cross, Wrock, Miller & Vieson by W. Robert Chandler, Detroit, Mich., for defendant Haggerty Lumber & Supply Co.

Barris, Golob & Pritchard, P. C. by David DuMouchel, Detroit, Mich., for defendant Gibbs Lumber Co.

## OPINION

GILMORE, District Judge.

Before the Court is plaintiffs' motion for certification of a class in this civil case alleging violations of the antitrust laws. The class sought to be certified is one consisting of all builders, i. e. persons or entities engaged in the business of building residential homes and/or apartment buildings, who purchased from any defendant retail lumber dealer any of the products listed on the market report of the defendant association at any time between 1970 and the filing of this action.

The action is brought under the Clayton Act, 15 U.S.C. § 15. Plaintiffs are builders engaged in the business of building residential homes and/or apartment buildings. Defendants are six lumber dealers and one trade association in the greater Detroit area. It is alleged that, through the Lumbermen's Association and its price listings, defendants engaged in a conspiracy in violation of the Sherman Act, 15 U.S.C. § 1. There is also a claim for injunctive relief under the Clayton Act, 15 U.S.C. § 26.

Plaintiffs' claim follows close on the heels of a prior criminal antitrust action involving the identical defendants, United States Detroit Lumbermen's Association, et al., Criminal No. 78–80706. In that case, all defendants pleaded nolo contendere on October 15, 1979.

Defendants' principal arguments against class certification are grounded on FRCP 23(a)(3) and (4), relating to typicality and adequacy of representation, and 23(b)(3), relating to the predominance of common questions of fact and law, and the superiority of the class action over other available means for the fair adjudication of the controversy.[1]

With reference to 23(a)(3) and (4), defendants argue that the adequate representation and typicality requirements are not met. FRCP 23(a)(3) and (4) provide in part:

"... (3) The claims or defenses of the representative parties are typical of the claims and defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

In construing these portions of the rule, the Sixth Circuit in *Senter v. General Motors*, 532 F.2d 511, 524, 525 (CA6 1975) stated:

"There are two criteria for determining whether the representation of the class will be adequate: (1) The representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interest of the class through qualified counsel.

. . . . .

"To be typical, a representative's claim need not always involve the same facts or law provided there is a common element of fact or law."

It is thus clear that strict identity between the claims of the named plaintiff and the claims of the proposed class members is not necessary. The representative must

---

1. To maintain a class action, all of the prerequisites of 23(a) must be met, and one of the requisites of 23(b). The only 23(b) requisite applicable here is 23(b)(3). 23(b)(1) and (2) are not applicable.

have common interests with the class, and it must appear that he will vigorously prosecute those interests through qualified counsel. What is essential is that there be a common element of fact or law.

Here, plaintiff American Custom Homes built homes in a substantially different manner than other members of the proposed class. Each of the homes is individually designed, and the credit terms with the various lumber companies received by Mr. Margulies, the President of American Custom Homes, resulted from individual negotiations. Moreover, substantial discounts were also negotiated. It is clear that there are a myriad of ways in which the proposed plaintiffs have purchased lumber from the defendants involving various credit and buying arrangements, and it is clear that there were individually negotiated prices, individually negotiated packages of materials, different terms of credit, and various types of arrangements for purchase. In short, an individual inquiry into each particular purchase would probably be necessary to resolve the dispute.

These facts are relevant to defendants' second line of attack under Rule 23(b)(3), but they are not sufficient for this Court to find that the requirements of 23(a)(3) and (4) have not been met. Even though there are different credit and purchase arrangements entered into, there is typicality in that there are dealings with defendant companies for the purchase of lumber. Furthermore, there is no showing that the representatives would not vigorously prosecute the interests of the class action. There are common elements of fact or law involved in the purchases, and, therefore, defendants' arguments as to the typicality and representation issues are not well taken.

Defendants' second line of attack, however, has merit. Their basic argument here is that all sales are individual, that there were individual negotiations for credit terms, that the American Custom Homes built individual homes, individually designed, that there are a myriad of ways in which the proposed plaintiffs may have purchased lumber, involving many different

kinds of credit and buying arrangements, and that there simply are not sufficient common issues of fact and law predominating over individual claims to justify class certification under FRCP 23(b)(3).

It is contended that common issues could not possibly predominate. Rule 23(b)(3) provides in pertinent part that a class action may be maintained if:

"(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Defendants also contend that Rule 23(b)(3)(D) prevents the certification of the class. 23(b)(3)(D) requires the Court to consider the difficulties likely to be encountered in the management of a class action.

Resolution of the issue requires an inquiry into the fundamental purpose of Rule 23. Authorities have been cited by both sides on the issue. Defendants cite, among other cases, *Windham v. American Brands, Inc.*, 565 F.2d 59 (CA4 1977); *Alabama v. Blue Bird Body Co., Inc.*, 573 F.2d 309 (CA5 1978) and *Shumate & Company, Inc. v. National Association of Security Dealers, Inc.*, 509 F.2d 147 (CA5 1975). These cases generally stand for the proposition that generalized or class-wide proof of damages in a bifurcated antitrust action is not permissible and that even though the issues of liability and damages are treated in separate trials, plaintiffs must show that every class member has, in fact, been injured.

Plaintiff, on the other hand, relies upon, among other cases, *In re Folding Carton Antitrust Litigations*, 75 F.R.D. 727 (N.D. Ill.1977): *In re Sugar Industry Antitrust Litigation*, 73 F.R.D. 322 (E.D.Penn 1976), and *In re Glassine and Greaseproof Paper Antitrust Litigation*, 88 F.R.D. 302. (E.D. Penn 1980.) Citing these cases, plaintiffs claim that the trial should be bifurcated. The first stage would require that plaintiff prove liability. They say this would be established by proving that all proposed plaintiffs purchased in the affected market.

The second stage would involve the determination of damages as to each individual plaintiff.

This Court is more impressed by the reasoning of *Windham* and *Blue Bird* than by the reasoning of those cases cited by plaintiffs. In *Windham*, the Court clearly recognized that the 23(b)(3) determination is particularly within the discretion of the trial judge, and that the gravamen of the antitrust violation is individual injury. In holding that the district judge's denial of class certification was appropriate, the Court said:

"...The claims of the parties would involve thousands upon thousands of sales during four separate annual marketing seasons. Moreover, the claims could not be proved by any set method of mathematical or formula calculation but would require individual proof and trial, necessitating the examination of countless invoices, warehouse records, etc.... In view of the overwhelming nature of the individual claims and their complexity, he found, as we have said, that the issue of violation did not predominate nor was a class action a superior remedy in the case." *Windham*, supra, at 66, 67.

In *Blue Bird*, supra, the Court stated:

"Proof of a violation of the Sherman Act standing alone does not establish civil liability under § 4 of the Clayton Act. There must ... be proof of 'injury to business or property' before a Sherman Act violation becomes cognizable as a private civil remedy ... a prerequisite to recovery was a showing by the plaintiff of the violation of the antitrust laws, the fact of damage, and some indication of the amount of damage.... *Terrell* [v. *Household Goods Carriers' Bureau*, 494 F.2d 16 (5th Cir. 1974)] established that 'liability' for ¶ 4 purposes means a showing of both antitrust violation and *fact of damage*. The term 'fact of damage' can be likened to the causation element in a negligence cause of action. The term means simply that the antitrust violation caused injury to the antitrust plaintiff." *Blue Bird*, supra, at 317.

Here there were thousands of transactions involved; each transaction was different; various plaintiffs, who number in the hundreds, may have purchased lumber in different ways under different credit terms for different purposes; and the manner of building was different. It is clear that the questions of fact affecting individual members predominate over any common questions of fact. It further appears that the class action method is not superior to other available methods for the fair and efficient adjudication of the controversy. With so many plaintiffs, so many different manners of purchase, so many different credit arrangements, so many different individual operations, common questions of fact simply do not predominate over questions affecting the individual members.

Rule 23(b)(3) requires that the class action be superior to other available means for a fair and efficient adjudication of the controversy. In making this finding the Court must consider, among other things, difficulties likely to be encountered in the management of a class action.

In *Ott v. Speedwriting Publishing Company*, 518 F.2d 1143 (CA6 1975), the trial court denied class certification in part on the basis of Rule 23(b)(3)(D):

"... Specifically, the court found that the case would not be manageable as a class action (23(b)(3)(D)) because of the difficult nature of antitrust actions generally, the fact shown by the affidavits of the defendants that practices with respect to distribution of Speedwriting books vary greatly among the different licensees, and that a market share analysis would be required of approximately 200 metropolitan areas where licensees of the Speedwriting method operate.... In fact the Court found that there were issues that would necessarily need to be separately resolved with respect to each class member.

.     .     .     .     .

"... We find no error in the court's conclusion that the plaintiff failed to demonstrate that she could meet the requirements of Rule 23 in this case. The

language of Rule 23, and particularly 23(b), appears clearly to be addressed to the discretion of the trial court. . . ." *Id.* at 1150.

Here it is uncontroverted that the proposed class may involve as many as 200 or more plaintiffs. The plaintiffs purchased lumber in a myriad of different ways involving literally tens of thousands of transactions. Management of such a class action would impose too great a burden on the Court.

For the reasons given, the motion for class certification will be denied. An order may be presented.