**Joseph MEKANI and Mizied Swidan, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**MILLER BREWING COMPANY, Pabst Brewing Company, Anheuser-Busch, Inc., Stroh Brewery Company, Carling National Breweries, Inc., Jos. Schlitz Brewing Company, individually, and DBD, Inc., Monroe Beverage Company, and Great Lakes Beverage Company, individually and on behalf of all others similarly situated, Defendants.**

Civ. A. No. 79–73546.

United States District Court,
E. D. Michigan, S. D.

Feb. 4, 1982.

Fieger, Cousens & Boesky, P. C. by Bernard Fieger, Southfield, Mich., Robert V. Seymour, Southfield, Mich., for plaintiffs.

Dickinson, Wright, McKean, Cudlip & Moon by John A. Krsul, Jr., Kenneth J. McIntyre, Detroit, Mich., Kerr, Russell & Weber by Roy H. Christiansen, William A. Sankbeil, Detroit, Mich., for defendant Pabst Brewing Co.

Dykema, Gossett, Spencer, Goodnow & Trigg by Fred L. Woodworth, Detroit, Mich., Howrey & Simon by Terrence C. Sheehy, John W. Nields, Jr., Albert C. Loebe, Washington, D. C., for defendant Anheuser-Busch, Inc.

Butzel, Long, Gust, Klein & Van Zile by Leslie W. Fleming, Robert M. Klein, Detroit, Mich., for defendant Stroh Brewery Co.

Foley & Lardner by Maurice J. McSweeney, Milwaukee, Wis., Long, Preston, Kinnaird & Avant by Grady Avant, Jr., Detroit, Mich., for defendant Carling National Breweries, Inc.

Chadwell, Kayser, Ruggles, McGee & Hastings, Ltd. by Paul H. LaRue, Chicago, Ill., Martin J. Adelman, Southfield, Mich., for defendant Joseph Schlitz Brewing Co.

Hill, Lewis, Adams, Goodrich & Tait by Thomas N. Burnham, Nancy L. Hutcheson, Detroit, Mich., for defendant DBD, Inc.

Hill, Lewis, Adams, Goodrich & Tait by W. Merritt Jones, Jr., Timothy W. Hefferon, Detroit, Mich., for defendant Monroe Beverage Co.

Butzel, Long, Gust, Klein & Van Zile by William M. Saxton, Detroit, Mich., for defendant Great Lakes Beverage Co.

## OPINION

GILMORE, District Judge.

This case involves the price charged for beer in certain parts of Michigan following implementation of the law requiring refundable deposits for beer containers. Plaintiffs Joseph Mekani and Mizied Swidan are two Michigan beer retailers. The defendants consist of six major beer brewers (i.e. manufacturers and bottlers of beer) and various beer distributors (i.e. those who purchase beer from manufacturers and sell it to retailers.)[1] The complaint alleges that the price of beer in Michigan is higher than it should be because the defendants have engaged in various conspiracies and activities in violation of the federal antitrust laws. Count I of plaintiffs' amended complaint alleges that the distributors engaged in a conspiracy to fix prices and assign territories in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 (1976). Count II alleges that the beer brewers have violated the Robinson-Patman Act, 15 U.S.C. § 13(a) (1976), by discriminating in the prices charged to Michigan distributors as compared to distributors in Ohio and Indiana. Count III alleges that the brewers *and* the distributors have engaged in a conspiracy to fix prices and maintain non-competitive territories in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (1976). The plaintiffs seek treble damages under Section 4 of the Clayton Act, 15 U.S.C. § 15 (1976).

The case is presently before the Court on plaintiffs' motion to certify a class of plaintiff-retailers. The proposed class consists of beer retailers located in the two southern tiers of counties in lower Michigan and certain counties in the third tier. The prospective class members are defined as persons who sell beer at retail prices in packages, rather than by the glass, for consumption off-premises. Plaintiffs state that the number of proposed class members is approximately 8700; the defendants claim that the number of proposed class members is closer to 10,000.

## RULE 23 REQUIREMENTS

To maintain a class action, the plaintiffs must prove that they meet all the requirements of Federal Rules of Civil Procedure 23(a) and at least one of the subsections of Rule 23(b). The plaintiffs in the instant case seek certification under Rule 23(b)(3). Defendant brewers have objected to class certification on the grounds that plaintiffs have failed to fulfill the requirements of Rules 23(a)(3), 23(a)(4), and 23(b)(3).

Rule 23(a), in pertinent part, provides:

---

1. The complaint names three specific distributors—DBD, Inc., Monroe Beverage Co., and Great Lakes Beverage Co. The plaintiffs have stated that they intend to certify a class of defendant distributors. The plaintiffs' complaint estimates that there are 280 distributors who would become part of the defendant class. The defendants' brief in opposition to class certification indicates that there are 180 distributors.

"*Prerequisites to a class action* One or more members of a class may sue or be sued as representative parties on behalf of all only if . . . (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

A leading case in the Sixth Circuit discussing Rules 23(a)(3) and 23(a)(4) is *Senter v. General Motors*, 532 F.2d 511 (6th Cir. 1976). There the Court held:

"There are two criteria for determining whether the representation of the class will be adequate: 1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Id.* at 524–525

Further, in footnote 31, the Court states:

"To be typical, a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law." *Id.* at 525

█ In short, strict identity between the claims of the named plaintiffs and the claims of the proposed class members is not necessary. To fulfill the requirements of Rule 23(a)(3), all that is required is that the representatives have common interests with the class. To meet the requirements of Rule 23(a)(4), it must appear that they will vigorously prosecute the interests of the class through qualified counsel. The Court feels that plaintiffs meet the requirements of Rules 23(a)(3) and 23(a)(4). With reference to Rule 23(a)(3), it is clear that the named plaintiffs have common interests with the class. All members of the proposed class are retailers who sell beer in the two southern tiers of counties in lower Michigan and certain counties in the third tier. They all sell beer at retail as package stores and not for consumption on the premises. It is true that there is not strict identity between the claims of the named plaintiffs and the claims of the proposed class members, but this is not necessary.

There are different methods of sale, different manners in which the beer is sold, and other differences. But strict identity is not necessary to meet the requirements of Rule 23(a)(3). All that is necessary is that there be common interests in the class, and they are present here. *See generally American Custom Homes v. Detroit Lumbermen's Association*, 91 F.R.D. 548 (ED Mich 1981).

With reference to Rule 23(a)(4), it is necessary that it appear that plaintiffs will vigorously prosecute the action with qualified counsel. Here there is no question but what plaintiffs have qualified counsel. Counsel have demonstrated in the handling of this case to date that they will prosecute the case with vigor, and that they are well qualified to do so. Therefore the requirements of Rule 23(a)(4) are met.

The Court finds, however, that the class cannot be maintained under Rule 23(b)(3). Rule 23(b)(3) provides:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

    \*     \*     \*     \*     \*     \*

(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

The defendants contend that if the proposed class is certified, individual, rather than common, issues will predominate with respect to both liability and damages. In order to analyze this argument, it is neces-

sary to outline the parties' positions regarding each allegation in the complaint.[2]

### I. The Sherman Act Claim

■ Count III of the complaint charges that the brewers and distributors have conspired to fix the price at which beer is sold to plaintiff dealers and to establish and maintain noncompetitive geographic territories. The plaintiffs have alleged that the beer brewers conspired among themselves to fix prices, thus creating a horizontal conspiracy, and then either conspired with or coerced the distributors to follow the alleged price-fixing scheme. This alleged combination between the brewers and distributors permeates two levels of the beer industry; thus, plaintiffs have also alleged a vertical conspiracy between the brewers and the distributors.[3]

The defendants' basic argument is that the vertical element of Count III makes class certification inappropriate. The defendants state that there are approximately 180 different distributorships in the relevant counties. Each class member deals with a different group of distributors. If a class is certified, defendants urge, the plaintiffs will have to prove that each of the individual distributors from whom the class members bought beer were involved in the price fixing scheme with the brewers. The defendants have attached affidavits from a random sample of distributors who state that they will deny that their prices were controlled by agreement with the brewers or otherwise. (See, e.g., Affidavit of Walter Wolpin, defendants' exhibit 4.) Defendants argue that, since plaintiffs will have to prove an illegal agreement by or coercion of each of the 180 distributors, common questions of law or fact do not predominate. Essentially, defendants argue, the case will break up into 180 separate trials.

Plaintiffs, on the other hand, contend that common questions of law and fact do predominate. Plaintiffs believe that the common questions of establishing the existence and scope of the conspiracy predominate over issues affecting only individuals. They claim that common questions predominate because it is only necessary to prove the existence of a common plan and its acceptance by the conspirators to prove the illegal conspiracy. Plaintiffs say that they need only demonstrate the price-fixing agreement among the brewers in order to prove their case.

*In re Fine Paper Antitrust Litigation,* 82 F.R.D. 143 (E.D.Pa.1979), involved a situation similar to that presented by the instant case. In that case, several states sought to bring a class action against "fine paper" manufacturers (mills). The states alleged a conspiracy involving defendant mills and independent merchant houses. Merchant houses are wholesale paper merchants who buy from the mills; thus, they are in the same position as the beer distributors in the instant case. The Court found that plaintiffs could not establish a generalized method of proof; thus, common questions did not predominate. The Court noted:

"By including the independent house middlemen in their allegations of antitrust the plaintiffs when the pricing scheme was "passed on" to plaintiffs through the chain of distribution. Under *Illinois Brick v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), *reh. den.* 434 U.S. 881, 98 S.Ct. 243, 54 L.Ed.2d 164 (1977), the plaintiffs, as indirect purchasers from the brewers, cannot sue for an illegally fixed price which was passed on to them. Thus, in order to maintain any price-fixing count against the brewers, it is necessary for plaintiffs to allege that the distributors were involved in the conspiracy (or that the brewers were somehow responsible for the prices charged by distributors through, for example, a resale price maintenance agreement).

---

**2.** Defendant brewers have filed a joint brief in opposition to class certification. The defendant distributors (the 3 named distributors) have indicated that they concur in the brewers' brief. However, the brewers' brief does not discuss the propriety of maintaining a class action with respect to Count I (which states a claim only against defendant distributors). The brief merely contains a footnote which states that many of the arguments raised with respect to Counts II and III would also apply to Count I. Therefore, the Court will first discuss the defendants' objections to class certification with respect to Counts II and III.

**3.** The plaintiffs could not merely allege that the beer brewers fixed prices which impacted on

violations, the majority states are seeking to establish the existence of a conspiracy that permeates two different levels of the fine paper distribution system, through a horizontal combination among mills and a vertical combination among mills and merchant houses.

". . . [P]roof of the existence of conspiracy among the mill defendants, while possibly probative of the independent merchant houses involvement, is insufficient to establish the participation of the many independent merchant houses in the vertical arm of the conspiracy [cites omitted]. In addition, the defendants must have an opportunity to rebut any inference such proof of a mill level conspiracy establishes with their own evidence that individual merchant houses from whom class members purchased were not involved in the price fixing scheme [cite omitted]. For this reason, common questions do not predominate.

"The [plaintiffs] have not delineated any other method besides proof of a conspiracy among the mills by which the many independent merchant houses will be shown to have participated in the conspiracy—a showing which each class member who purchased from an independent merchant house makes in order to establish liability. It does not appear that one common set of facts will be sufficient to prove the charged illegality of the conduct of each independent merchant house-mill defendant combination. The [plaintiffs] will thus have to prove the existence of an implicit agreement to fix prices or "coercion" of each relevant merchant house in order to establish the liability of the independent merchant house defendants [cites omitted]. This court concludes that the necessity of establishing the involvement of the independent merchant houses represents individual questions which predominate over common questions and precludes class certification."

*Id.* at 156

The plaintiffs in the instant case have not satisfactorily demonstrated any method by which the distributors' participation in the

conspiracy can be proved through any common set of facts. Plaintiffs' argument that there are common issues because there is only one conspiracy does not address the real issue. The complaint specifically alleges that the brewers, by agreement or coercion, imposed their plan on the distributors. Thus, the plaintiffs will necessarily have to show some sort of agreement or coercion between the brewers and *each* of the 180 distributors. Defendants contend, and the Court agrees, that the very process of proving the existence of the vertical arm of the conspiracy will raise questions which would require individual treatment. The case would degenerate into 180 separate trials and common questions would be overwhelmed by issues peculiar to individual parties. The plaintiffs' bald allegation that a conspiracy existed in violation of the antitrust laws "does not insure that common questions will predominate." *In Re Hotel Telephone Charges,* 500 F.2d 86, 89 (9th Cir. 1974). *See generally, Young v. Jo-Ann's Nut House, Inc.,* 1980 Trade Cas. (CCH), ¶ 63, 746 (D.N.J.1980); *Abrams v. Interco, Inc.,* 1981–2 Trade Cas. (CCH) ¶ 64, 295 (S.D.N.Y.1981).

The plaintiffs, in support of their position that class treatment is appropriate in this case, point to another part of the Courts' opinion in *In re Fine Paper Antitrust Litigation, supra.* A separate group of states (referred to as minority states in the Courts' opinion) sought class certification. This set of plaintiffs had alleged that merchant houses owned by or affiliated with the mill defendants had violated the antitrust laws. The defendants argued that this allegation made class certification inappropriate because the lawsuit would involve 125 vertical conspiracies between the mill defendants and the mill-owned merchant houses. The Court disagreed, noting that there were few mill-owned subsidiaries accused of conspiring, and that proof of such a conspiracy would be the same for each class member. Finally the Court noted that to impose the existence of corporate subsidiaries to change a horizontal conspiracy into a plethora of vertical conspiracies would

permit any corporate antitrust violator to bypass the threat of treble damage class actions.

This part of *Fine Paper* is distinguishable from the instant case because plaintiffs do not claim that the distributors are wholly-owned subsidiaries. The plaintiffs do, however, maintain that the distributors are in the same position as wholly-owned subsidiaries because the brewers wield economic power over the distributors. Even if the Court were to accept this analogy, it would not affect the determination that common issues of law or fact do not predominate. On the contrary, in order to support their theory, the plaintiffs would have to prove that the brewers do, in fact, exercise effective control over the distributors. The parties would likely end up in protracted litigation with each individual distributor to determine this preliminary issue.

Finally, defendants contend that even if the existence of a conspiracy is proved, the plaintiffs are required to prove fact of injury. The defendants argue that because prices and costs vary with each local market and because the defendants market a myriad of different brands and packages that vary in price, the amount of injury could not be proven on a class-wide basis. Such individualized inquiries could pose a great burden on the court and render the case unmanageable as a class action. *See Windham v. American Brands, Inc.*, 565 F.2d 59 (4th Cir. 1977) *cert. den.* 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978); *Alabama v. Blue Bird Body Co., Inc.*, 573 F.2d 309 (5th Cir. 1978); *American Custom Homes v. Detroit Lumberman's Association*, 91 F.R.D. 548 (E.D.Mich.1981).

II. The Robinson-Patman Act Claim

In Count II of the complaint, plaintiffs allege that after imposition of the mandatory deposit law defendant brewers violated § 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a) (1976) by conspiring to discriminate against Michigan and in favor of Ohio and Indiana in the prices they charged the distributors for beer.

In order for the plaintiffs in this case to recover treble damages under § 4 of the the Clayton Act for the alleged violation of the Robinson-Patman Act, they "must make some showing of actual injury attributable to something the antitrust laws were designed to prevent." *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 101 S.Ct. 1923, 68 L.Ed.2d 442 (1981). The defendants maintain that proof of actual injury will raise distinctly individual questions, thus making this claim unsuitable for class treatment.

Plaintiffs' assertion that the claim is suitable for class treatment because the questions of competitive injury and competition with out-of-state retailers are identical for all prospective class members is not convincing.

In *Boro Hall v. Metropolitan Tobacco Co.*, 74 F.R.D. 142 (E.D.N.Y.1977), the Court denied a motion for class certification in a Robinson-Patman price discrimination claim stating:

> In a class action . . . each class member must prove that the defendant's discriminatory pricing injured him.
>
> . . . Each class member's proof as to competitive injury and thus as to liability will be highly individualistic.
>
> For this reason the courts have generally denied class action motions in Robinson-Patman Act cases. *Id.* at 145

In the instant case, each of the plaintiff retailers sells a variety of beer products at a wide range of prices in different geographical areas. This Court cannot assume that the determination of competitive injury will be identical for such a large number of plaintiffs spread over such a large geographical area. In conjunction with proving fact of injury, the plaintiff in a Robinson-Patman claim must show that the "persons receiving the different prices are in actual, functional competition with one another." *M.C. Manufacturing Co. v. Texas Foundries, Inc.*, 517 F.2d 1059, 1066 (5th Cir., 1975) *cert. den.*, 424 U.S. 968, 96 S.Ct. 1466, 47 L.Ed.2d 736 (1976). In the instant case, each of the plaintiff-retailers involved in the price discrimination claim will have to prove that he lost business to

an Ohio or Indiana retailer. Such an inquiry will inevitably involve an overwhelming number of individual issues. *See Bel Air Market v. Foremost Dairies, Inc.*, 55 F.R.D. 538 (N.D.Cal.1972).[4]

If the price discrimination claim proceeds as a class action, it seems clear that individual issues will predominate over questions common to the class as a whole. Further, the number of plaintiffs involved, coupled with the complexity of the factual inquiry required for each retailer, makes the claim unmanageable as a class action.

### III. The Sherman Act Claim Against the Distributors

Count I of the complaint alleges the existence of a horizontal price-fixing conspiracy among the distributors. The defendant distributors did not file briefs in opposition to class certification. Instead, they filed pleadings indicating their intent to join the brief filed by the brewers. The brief filed by defendant brewers does not discuss the potential problems of maintaining the Count I claim as a class action in detail. The distributors have, both in their written pleadings and at oral argument, stated that all the arguments raised with respect to Counts II and III apply to Count I.

Count I involves an alleged price-fixing conspiracy among at least 180 distributors, each of whom sells to different retailers. In order to prove their claim, plaintiffs must show the participation of each of the distributors in some agreement or plan to fix prices and assign territories. The liability of each distributor raises inherently individual questions. *See Kline v. Coldwell, Banker & Co.*, 508 F.2d 226 (9th Cir. 1974), cert. den., 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975); *In re Hotel Telephone Charges*, 500 F.2d 86 (9th Cir. 1974).

More importantly, the price-fixing claim in Count I raises a host of individual questions regarding actual injury to each of the plaintiffs. The defendants distribute a variety of different brands and packages of beer at prices that vary over time. Without delving into the merits of the case, the Court notes defendants' assertion that each retailer bought different brands and amounts of beer at different prices at different times from different distributors. *See e.g.*, Affidavit of Stanley L. Wilson, Jr., at 1 (Exhibit 12 to defendants' brief.) To verify that each of the 10,000 plaintiffs suffered an actual injury, the Court would be required to examine an overwhelming number of transactions between the plaintiffs and their distributors. This inquiry poses a great burden and renders this case unmanageable as a class action.

For the reasons given above, plaintiffs' motion for class certification must be denied.

---

4. Plaintiffs cite *Gold Strike Stamp Co. v. Christensen*, 436 F.2d 791 (10th Cir. 1970) for the proposition that they need not show effect and competition between Michigan retailers and retailers in other states. The Court does not find this argument persuasive. The Court in *Gold Strike* was faced with a different factual situation. Further, the *Gold Strike* court specifically noted that generalized proof of injury in fact was possible because the Robinson-Patman Act does not speak to actual effect on competition but rather the plaintiff need only establish that there is a reasonable possibility that the price differential will have an effect on competition. In *J. Truett Payne Co. v. Chrysler Motors Corp., supra,* the Supreme Court rejected the "reasonable possibility" standard and held that plaintiffs must always prove fact of injury in a Robinson-Patman claim brought as a treble damage action under section 4 of the Clayton Act. Thus, the authority of the *Gold Strike* case is questionable.