**KENETT CORPORATION**

v.

**MASSACHUSETTS FURNITURE AND PIANO MOVERS ASSOCIATION, INC., et al.**

**Civ. A. No. 82–140–Z.**

United States District Court, D. Massachusetts.

Feb. 9, 1984.

Harold Brown, Alan S. Einhorn, Boston, Mass., for plaintiff.

Samuel J. Armstrong, Susan S. Dunn, Warner & Stackpole, Boston, Mass., for Mass. Furniture.

Edward R. Wine, Avery, Dooley, Post & Avery, Boston, Mass., for Global Van Lines.

Peter B. Ellis, Steven W. Phillips, Foley, Hoag & Eliot, Boston, Mass., for Bekins.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

Plaintiff alleges that defendants and unnamed coconspirators conspired to raise, fix, maintain, or stabilize the prices of moving household goods and office equipment in Massachusetts. The case is before me now on plaintiff's motion for class certification.[1]

The defendant companies are engaged in the moving business. This includes the transportation of household goods and office equipment as well as related services such as packing, intermediate storage, hoisting and lowering, piano and organ carrying, and stair and distance carrying. The Massachusetts Furniture and Piano Movers Association ("Mass. Movers"), also a defendant, is an association organized to promote and advise the moving industry in Massachusetts. It has 300 members, constituting approximately 80% of all movers doing some intrastate business in Massachusetts. Mass. Movers performs no moving services itself.

The Massachusetts intrastate trucking industry is regulated by the Massachusetts Department of Public Utilities ("MDPU"). MDPU certifies truckers to move household goods and office equipment within Massachusetts. In addition, each mover must file a tariff with MDPU containing the mover's charges for the services it provides. A mover cannot depart from the tariff once it is accepted by MDPU.

One of the primary functions of Mass. Movers is to prepare and file with MDPU joint rates on behalf of its members. Such joint tariffs are authorized by MDPU regulations. Both members and nonmembers of Mass. Movers are free to acquiesce in any part of the joint tariff (unless it is suspended by MDPU) by filing concurrence forms with MDPU, or they may file their own tariffs for approval. Mass. Movers last filed a joint tariff with MDPU in 1971. The tariff consisted of nine complete hourly rate tables, of which movers were free to accept any one. Two additional tables at higher rates were added between 1971 and 1974. MDPU has refused to accept any higher rate tables filed by Mass. Movers since 1974, although many of its members have successfully filed individual tariffs at higher rates since then.

On June 12, 1980, the Federal Trade Commission filed a complaint against Mass. Movers charging a price fixing conspiracy in violation of the Federal Trade Commission Act, 15 U.S.C. § 45. The Administrative Law Judge issued an initial decision on December 1, 1981; he found that Mass. Movers and its members, by arriving at mutually agreeable rate schedules to be filed with MDPU, violated Section 1 of the Sherman Act and Section 5 of the Federal Trade Commission Act.

■ On the motion for class certification, plaintiff has the burden of showing that the suit meets the specific requirements of Fed.R.Civ.P. 23. *See, e.g., Delga-*

---

1. Plaintiff seeks to represent the class of "[a]ll individuals, proprietorships, partnerships, corporations or other business entities in the United States (excluding defendants, their subsidiaries and affiliates) who, during the time period of December 1, 1977 to January 19, 1982 uti- lized and paid for the services of a defendant moving company to transport household furniture and goods, office equipment, pianos and other large objects from point to point within the Commonwealth of Massachusetts."

do v. McTighe, 91 F.R.D. 76, 78 (E.D.Pa. 1981); Bass v. Boston Five Cent Savings Bank, 478 F.Supp. 741, 745 (D.Mass.1979). Since it seeks certification under the provisions of Fed.R.Civ.P. 23(b)(3); it must satisfy the requirements of both Rule 23(a) and 23(b)(3).[2] Under the latter, plaintiff must establish that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Defendants forcefully contend that this requirement is not satisfied in this case and the certification should be denied. I agree.

▮▮▮ In order to impose civil liability on defendants in a private antitrust action, plaintiff must establish: (1) a violation of the antitrust laws; (2) direct injury to plaintiff from such violation; and (3) damages sustained by plaintiff. See Alabama v. Blue Bird Body Co., Inc., 573 F.2d 309, 317 (5th Cir.1978); Windham v. American Brands, Inc., 565 F.2d 59, 65 (4th Cir.1977), cert. denied, 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978). Absent proof of direct injury to or impact on plaintiff, a mere finding of a conspiracy in violation of the antitrust laws is insufficient to establish liability. Plaintiff argues that the first two of these issues, the existence of a conspiracy and impact, can be proved in common for the class as a whole and, therefore, common questions predominate.

▮▮▮ At the outset, defendants raise the specter of hundreds of "mini-trials" to assess damages. Each member of the putative class paid a different price for a different set of moving services purchased from one of 28 defendants. Although it is likely that the question of damages will require

individualized proof, this alone is insufficient to deny class certification. See In re Screws Antitrust Litigation, 91 F.R.D. 52, 58 (D.Mass.1981); Shelter Realty Corp. v. Allied Maintenance Corp., 75 F.R.D. 34, 37 (S.D.N.Y.1977), appeal dismissed, 574 F.2d 656 (2d Cir.1978) (noting that if individualized proof of damages was alone sufficient to defeat class, "there would be little if any place for the class action device in the adjudication of antitrust claims"). The conspiracy and impact issues must, therefore, be examined.

Plaintiff argues that the existence of a conspiracy is an issue common to the proposed class. Although this may be true, as a general proposition, in cases of alleged horizontal price fixing conspiracies, see, e.g., In re Screws Antitrust Litigation, 91 F.R.D. at 56; Chevalier v. Baird Savings Association, 72 F.R.D. 140, 149 (E.D.Pa. 1976), each case must, nonetheless, be considered on its individual facts. See In re Hotel Telephone Charges, 500 F.2d 86, 89 (9th Cir.1974) ("allegation that a conspiracy existed to violate the antitrust laws does not insure that common questions will predominate").

▮▮▮ In the instant case, the decision issued by the Federal Trade Commission Administrative Law Judge and affidavits filed by defendants demonstrate that moving services in Massachusetts are provided in several local markets, rather than in a single statewide market. The Administrative Law Judge found that Mass. Movers divided its membership into six zones and worked within each zone to achieve uniform rates. Proof of a conspiracy in the Boston area in 1979, therefore, would have

---

**2.** Under Fed.R.Civ.P. 23(a), plaintiff must show that:

"(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

In addition, Fed.R.Civ.P. 23(b)(3) requires that

"the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class

action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

no relevance to proving the existence of a conspiracy among Cape Cod movers at the same time, or, for that matter, among Boston movers in 1981. Plaintiff would have the burden of showing the configuration of the relevant markets and that the defendants and unnamed coconspirators serving each market knowingly participated in a conspiracy at the times alleged. Plaintiff has given no indication beyond mere *ipse dixit* how such an analysis is amenable to generalized proof.[3] Given the facts of this case, the issue of the existence of a conspiracy requires an individualized inquiry.[4] *See, e.g., Alabama v. Blue Bird Body Co., Inc.,* 573 F.2d 309, 321–23 (5th Cir.1978) (common issues do not predominate when plaintiff must prove antitrust conspiracy state by state rather than on nationwide basis); *National Auto Brokers Corp. v. General Motors Corp.,* 376 F.Supp. 620, 634 (S.D.N.Y.1974), *aff'd,* 572 F.2d 953 (2d Cir.1978), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 38 (1979).

Analysis of the impact issue reveals an even greater need for individual inquiry for each class member. The cases relied upon by plaintiff, involving a uniform supracompetitive price for a fungible product, are inapposite to this case. In such cases, proof of purchase is sufficient to establish impact and is, thus, susceptible to generalized proof. *See, e.g., Blue Bird Body Co.,* 573 F.2d at 324. The instant case, by contrast, involves a bundle of moving services that differs from mover to mover and from customer to customer. Although each service has a specific price fixed by the mover's approved tariff, these prices are only one factor in determining the total price that a customer will pay for a move. A higher hourly rate may be offset by a quicker, more efficient move. Services tailored to a particular customer's needs (e.g.,

a truck just large enough for the move), thereby making the most efficient use of resources and avoiding unused capacity, will also affect total price. Large companies with national reputations may feel less pressure to price their services competitively, while small local companies may be willing to bargain with cost-conscious customers in order to win their business.

These and other variables will all affect the total price paid by the consumer. Plaintiff's own experience is illustrative. Prior to its move it obtained six bids for the move; they ranged from a low of $5,492 to a high of $19,548. Because the exact mix of services purchased by each customer is unique, proof of impact can only be made on an individual basis. For each move made by a class member, individual inquiry would be necessary to determine how much that particular defendant would have charged for the move absent the alleged conspiracy, in light of the costs facing the company at the time, its competitive market, its reputation, and the particular services required for the move. Where such detailed analysis is required for each transaction in order to prove impact, courts are generally unwilling to certify a class. *See, e.g., Blue Bird Body Co.,* 573 F.2d at 324–328; *Windham v. American Brands, Inc.,* 565 F.2d 59, 66–68 (4th Cir.1977), *cert. denied,* 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978); *In re Hotel Telephone Charges,* 500 F.2d 86, 89 (9th Cir.1974); *In re Screws Antitrust Litigation,* 91 F.R.D. 52, 57 (D.Mass.1981); *American Custom Homes v. Detroit Lumberman's Association,* 91 F.R.D. 548, 551 (E.D.Mich.1981); *National Auto Brokers Corp. v. General Motors Corp.,* 60 F.R.D. 476, 490 (S.D.N.Y. 1973).

Plaintiff attempts, however, to avoid this conclusion by urging that the product at

---

**3.** Perhaps, plaintiff plans to prove only that defendant companies conspired with Mass. Movers to collaborate on joint rate schedules filed with MDPU. This would avoid having to show agreements within local markets to fix prices. It is unclear, however, how plaintiff would then show injury *resulting from* the conspiracy, since, absent local conspiracies, movers were free to adopt any of the eleven rate tables, or none at all.

**4.** Although carefully drawn subclasses could conceivably alleviate this problem, because plaintiff has produced no evidence of appropriate subclasses, I am unable now to address this possibility. Moreover, even were the class divided into subclasses, it appears that individual analysis would still be required to determine impact and damages.

issue be viewed homogeneously as simply moving services, rather than as a unique bundle of diverse services. It relies on *Davis v. Northside Realty Associates, Inc.,* 95 F.R.D. 39 (N.D.Ga.1982) in which sellers of private homes alleged that real estate brokers were fixing prices by uniformly charging a 7% brokerage fee. Although noting that each sale had circumstances peculiar to it, the court refused to deny class certification on this ground. The court reasoned that the bare essentials of the product was assisting in selling a home, which, for class certification purposes, could be viewed as a single homogeneous product. *Id.* at 47.

Although plaintiff's analogy is superficially appealing, it does not withstand closer scrutiny. In reaching its conclusion that broker's services should be viewed as a homogeneous product, the *Davis* court observed that the 7% brokerage fee was charged regardless of the number of types of sales techniques applied or the time, energy or money expended by the broker. *Id.* By contrast, in the case before me, each move was priced according to the particular blend of services employed by the mover and the special needs of the customer. The characteristics of the "product" in the instant case, therefore, are much closer to those of the real estate brokerage services described in *Nichols v. Mobile County Board of Realtors,* 1980–81 Trade Cas. (CCH) ¶ 63,688 (S.D.Ala.1980). In that case, the court denied class certification after noting that commission rates charged varied from 1% to 12%, depending on the services required and the estimated difficulty in making the sale. *Id.* at 77,694. Thus, *Davis* is inapposite.

█ Finally, plaintiff contends that individual damages can be calculated "on a percentage basis by the use of econometric and comparative models." Even if such models could overcome the plethora of individual issues that need be resolved in this case, it is well established that a court may not certify a class where it finds "that there are serious problems *now appearing,* ... merely on the assurance of counsel that some solution will be found." *Wind-*

*ham v. American Brands, Inc.,* 565 F.2d at 70, (emphasis in original); *see In re Hotel Telephone Charges,* 500 F.2d 86, 90 (9th Cir.1974).

For the foregoing reasons, the plaintiff's motion for class certification is denied. Accordingly, the motion by plaintiffs Peerless Sportswear Co. and Lee. A. Heiler, Jr. for reconsideration of my order of September 19, 1983 is granted. My order staying the Peerless and Heiler actions is vacated and plaintiffs' motion to consolidate these cases with that on behalf of Kenett Corporation is granted.